J-S49028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DECEE KARNGBAYE | |
| Appellant | No. 1872 MDA 2017 |

Appeal from the Judgment of Sentence imposed October 4, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0004753-2015

BEFORE:  SHOGAN, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 15, 2018**

Appellant, Decee Karngbaye, appeals from the judgment of sentence imposed on October 4, 2016 in the Court of Common Pleas of Lancaster County following his convictions of robbery, criminal conspiracy to commit robbery, and theft by extortion.[1]  Appellant argues insufficiency of evidence and sentencing errors.  We find the evidence was sufficient to support Appellant's convictions but agree the trial court erred in its imposition of certain aspects of Appellant's sentence, although the errors did not affect the overall sentence.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(c) and 3923(a)(1), respectively.

The trial court aptly summarized the unusual facts underlying this case in the "Background" portion of its Rule 1925(a) opinion, complete with citations to the notes of testimony. Briefly, Appellant played the role of bodyguard to his co-conspirator, Cole Williams (Williams), in a scam that resulted in payment of more than $16,000 to Appellant and Williams by their victim, Addisu Eggu (Eggu). Appellant and Williams first visited Eggu on April 30, 2015, in the restaurant Eggu established and operated in Lancaster after emigrating to the United States from Ethiopia. In that initial visit, Williams claimed he was the Abdullah, the son of the President of Liberia, and had five million dollars he wanted to invest in Eggu's restaurant. Because Eggu was busy with other customers, he gave Appellant and Williams his business card.

On the following Monday, May 4, 2015, Williams called Eggu to say he and his bodyguard (Appellant) would be visiting Eggu to discuss investing. The two men arrived at the restaurant the following day, with Williams carrying a black backpack he claimed contained $50,000 in cash, illustrating how serious he was about investing. Williams ordered Eggu to lock the door to the restaurant causing Eggu to protest about the loss of customers. At that point, Appellant's shirt moved or was lifted up revealing what Eggu described as the handle of a black gun in Appellant's waistband.

Eggu told the men he did not need any money. Appellant then asked if there were video cameras on site. When Eggu acknowledged there were cameras, Appellant directed Eggu to go to a back room (his office) to talk with

Williams. According to Eggu, Williams then showed him photographs of beheaded Ethiopians and told Eggu that would happen to him and to his family if he did not give Williams $20,000. Eggu and Williams then returned to the dining room of the restaurant.

Before Appellant and Williams left the restaurant that day, Eggu gave them the $200 he had on his person. He then pulled together $1,000 and called the men at the number they had given him. They set up a meeting at local hotel where Eggu gave them $1,000. Angered it was not the $20,000 demanded, Appellant threw the money in Eggu's face, took Eggu into the bathroom where he placed his hand over Eggu's nose and mouth, and commented to the effect that Eggu "not do nothing." When Eggu claimed he could get more money, they let him go, but kept the $1,000.

Eggu borrowed $3,000 from a friend, took out an $8,000 line of credit from his bank, and withdrew $4,000 from his checking account. After reporting to Appellant that he was able to come up with only $15,000, Appellant assured Eggu that they would be able to multiply that amount many times over. Although Eggu did not believe Appellant about the money, he was terrified of the men and acted out of fear.

Appellant and Williams returned to the restaurant on May 8 and instructed Eggu to turn off the video cameras and the lights. They brought with them a black bag filled with white paper cut to the size of U.S. currency. Essentially, they put a brown chemical in the bag and instructed Eggu to put

the bag in the refrigerator and not touch it. They left with Eggu's $15,000 and said they would be back to collect the black bag.

Later that night, Eggu began receiving calls from people claiming to be from Syria who threatened Eggu and told him not to touch the black bag. Frightened for his safety and the safety of his family, Eggu drove back and forth multiple times between his home and the restaurant, to check on his family and to see if the men had returned to the restaurant. He eventually woke his wife and told her what happened. She convinced him to contact the police. A friend escorted him to the police station the next day where he spoke with an intake officer to whom he gave the black trash bag. Police testing of the bag confirmed Appellant's fingerprint. Cell phone forensics revealed that the cell phone Eggu called pinged at towers aligning with Eggu's version of events and primarily pinged at an address close to Appellant's New Jersey residence. Police determined Appellant's identity and took him into custody on September 18, 2015.

The case proceeded to trial on August 3, 2016. At the conclusion of the three-day trial, a jury convicted Appellant of three counts of robbery, conspiracy to commit robbery, and two counts of theft by extortion. He was sentenced on October 4, 2016 to an aggregate sentence of seven and a half to fifteen years in a state correctional facility.[2] Post-sentence motions were

_____

[2] The court announced the sentence as follows:

denied and this appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents four issues for our consideration:

I. Did the trial court err in finding that the sentencing guideline enhancement for deadly weapon used applied to Counts 1 and 5, where the Commonwealth did not prove by a preponderance of the evidence that [Appellant] possessed or used a deadly weapon during the commission of the alleged robbery on May 5, 2015?

II. Was the evidence presented by the Commonwealth insufficient to sustain [Appellant's] conviction for robbery, as set forth in Counts 2 and 3 of the Information, where the actions of [Appellant] and the codefendant did not constitute a threat to place Mr. Eggu, or intentionally place

---

Count 1, robbery, three-and-a-half-to-seven years SCI, plus costs. Please note that the minimum sentence is within the guidelines regardless of whether I deem it a weapon possessed or a weapon used.
Count 2, robbery, two to four years SCI, consecutive to Count 1.
Count 3, robbery, two to four years SCI, consecutive to Count 1 and 2, costs on both.
Counts 4 and 6, one to two years SCI, concurrent with each other, and concurrent with Count 1.
Count 5 is costs only.
The aggregate sentence is seven-and-a-half to 15 years SCI. Restitution in the amount of $16,000. No contact with the victim.

N.T., Sentencing, 10/4/16, at 14-15. By way of explanation, we note that Counts 1, 2 and 3 stemmed from the robberies on May 5, 6 and 8, 2015, respectively. Count 4 involved criminal conspiracy. Counts 5 and 6 related to theft by extortion on May 5 and 8, 2015, respectively.

Mr. Eggu, in fear of immediate serious bodily injury, in the course of committing a theft?

III.   Was the imposition of sentences for theft by extortion, Counts 5 and 6, illegal, as these convictions should have merged with robbery convictions at Counts 1 and 3?

IV.   Was Count 6, theft by extortion, allegedly occurring on [May] 8, 2015, illegally graded as a second-degree felony, when it could only be graded as a first-degree misdemeanor, because the jury was not instructed to determine the element of value which would have increased the grading of the offense?

Appellant's Brief at 6-7.[3]

In his first issue, Appellant asserts trial court error for applying a "deadly weapon used" sentencing enhancement for Counts 1 and 5.[4]   Appellant contends the Commonwealth did not prove by a preponderance of evidence that Appellant possessed or used a deadly weapon on May 5, 2015.

_____

[3] In the Statement of Questions Presented, Appellant's counsel explained, with respect to Issue IV, that the issue was incorrectly asserted in the Rule 1925(b) statement as improper grading of extortion (Count 6) as a second-degree felony when it should have been graded as a third-degree felony based on the amount allegedly stolen.   Appellant's Brief at 7.   Counsel subsequently recognized that the grading of Count 6 was illegal because there was no jury finding of the amount at issue, making it a first-degree misdemeanor. Because the issue involves a claim of illegal sentence, there is no issue of waiver for failing to raise the issue properly in the Rule 1925(b) statement. *See, e.g., Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*) (claim of illegal sentence cannot be waived and may be considered *sua sponte* by this Court; further, an illegal sentence must be vacated).

[4]   Again, Counts 1 and 5 relate to the robbery and theft by extortion charges, respectively, from May 5, 2015.

As Appellant recognizes, a challenge to imposition of a deadly weapon enhancement constitutes a challenge to the discretionary aspects of sentencing. In keeping with the requirements for challenging the discretionary aspects of sentencing, Appellant has included a Rule 2119(f) statement and has raised a substantial question. Therefore, we shall consider it. *See Commonwealth v. Raybuck*, 915 A.2d 125, 127 (Pa. Super. 2006) (application of the deadly weapons enhancement presents a substantial question); *Commonwealth v. Pennington*, 751 A.2d 212, 215-16 (Pa. Super. 2000) (same).

Here, the trial court recognized that it has "no discretion to refuse to apply the deadly weapons enhancement when it is appropriate." Trial Court Opinion, 1/25/18, at 10 (quoting *Raybuck*, 915 A.2d at 129). By definition, a firearm, whether loaded or unloaded, is a deadly weapon under the deadly weapons enhancement provision of the sentencing guidelines. 204 Pa. Code § 303.10(a)(2)(i).

Appellant does not challenge the trial court's authority to apply the enhancement. Rather, Appellant contends the evidence does not support the trial court's finding, by a preponderance of the evidence, that Appellant possessed or used a deadly weapon during the encounter with Eggu on May 5, 2015. The trial court rejected that assertion, noting "the Commonwealth presented unrebutted testimony that [Appellant] brandished a handgun when he commanded the victim to lock the door of the restaurant" such that the

trial court "found the victim's testimony to be credible and consistent on this interaction and more than sufficient to find that [Appellant] used a deadly weapon to intimidate the victim by a preponderance of the evidence." Trial Court Opinion, 1/25/18, at 10. We agree. As the Commonwealth recognizes, "[a]lthough there is no clear part of the video that shows [Appellant] exposing a firearm, there are at least two parts of the video where [Appellant] is not fully visible." Commonwealth Brief at 11. The timing of those parts of the video coincides with the time just prior to Eggu locking the door, supporting Eggu's testimony that Appellant showed the firearm when he instructed Eggu to lock the door. *Id.* Therefore, we find no abuse of discretion on the part of the trial court for applying the deadly weapon enhancement for Counts 1 and 5.[5] Appellant's first issue fails.

In his second issue, Appellant argues the evidence was insufficient to sustain his convictions on Counts 2 and 3, relating to the robbery charges from May 6 and May 8, 2015, respectively. He contends his actions and those of Williams in the course of committing a theft did not threaten Eggu or intentionally put Eggu in fear of immediate bodily injury.

Our Supreme Court has explained:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict

---

[5] The trial court noted that "the minimum sentence is within the guidelines regardless of whether I deem it a weapon possessed or a weapon used." N.T., Sentencing, 10/4/16, at 15.

when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). Further:

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Feliciano*, 67 A.3d 19, 23-24 (Pa. Super. 2013) (*en banc*) (quoting *Commonwealth v. Stokes,* 38 A.3d 846, 853–854 (Pa. Super. 2011) (internal citations and quotations omitted)).

Appellant contends that the thefts committed on May 6 and May 8, 2015 constituted thefts by extortion, not robberies. Appellant's Brief at 23. Pursuant to 18 Pa.C.S.A. § 3923(a)(1), relating to theft by extortion, "[a] person is guilty of theft if he intentionally obtains or withholds property of another by threatening to: (1) commit another criminal offense[.]" By contrast, under 18 Pa.C.S.A. § 3701(a)(1)(ii), "[a] person is guilty of robbery

if, in the course of committing a theft, he: . . . (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" Appellant asserts:

> The key distinction between theft by extortion and robbery is that robbery involves threatening a person with "*immediate* serious bodily injury" in the course of committing a theft, whereas theft by extortion is accomplished by threatening to commit a criminal offense if the person does not comply with the demand for money, without the immediate threat of serious bodily injury required for a robbery.

Appellant's Brief at 23 (emphasis in original).

Appellant offers a summary of facts relating to the May 6 and May 8, 2015 events and concludes:

> The threat which was driving Mr. Eggu's behavior on May 6th was a threat to harm Mr. Eggu and his family if he did not bring them more money, not a threat to commit immediate serious injury to Mr. Eggu in the course of the theft of the $1000. Mr. Eggu was in fear of future injury to himself and his family; he was not in fear of immediate serious bodily injury in the course of the commission of the theft.
>
> Similarly, Mr. Eggu gave $15,000 to the men on May 8, 2015, not to avoid immediate serious bodily injury, but to prevent injury to himself and his family at some unknown future time. It does not make sense to suggest that Mr. Eggu called the men to his restaurant so that they could put him in fear of serious bodily injury; rather, he called them to the restaurant in hopes that giving them another $15,000 would prevent future injury to himself and his family. Again, this was textbook theft by extortion, and *not* robbery.

*Id.* at 26-27 (emphasis added).

Appellant ignores the principles that the evidence is to be viewed in the light most favorable to the Commonwealth as verdict winner and that

Commonwealth's burden may be satisfied by wholly circumstantial evidence with the fact finder resolving any doubt as the defendant's guilt. *See Widmer* and *Feliciano, supra*. Further, as the Commonwealth recognizes, the use of threatening words, gestures or aggressive actions threatening a victim's safety can support a felony robbery conviction. Commonwealth Brief at 13-14 (citing, *inter alia*, *Commonwealth v. Bragg*, 133 A.3d 328, 332 (Pa. Super. 2016) and *Commonwealth v. Davis*, 459 A.2d 1267, 1272 (Pa. Super. 1983)).

As the trial court explained, on May 6, Eggu went to the hotel to meet Appellant and Williams. When he presented his $1,000 to the men, Appellant threw it back in Eggu's face, made comments about Eggu doing nothing, and put his hand over Eggu's mouth and nose. Those actions, the trial court determined, "would put a reasonable person in fear that [Appellant] intended to asphyxiate him. That threat of immediate serious bodily injury coupled with the theft of the $1,000 is textbook robbery and the evidence was more than sufficient for the jury to find [Appellant] guilty on Count Two of the Information." Trial Court Opinion, 1/25/18, at 8-9. We agree.

With regard to the May 8 events, the trial court concluded that Eggu was still under a continued threat that noncompliance with the demands of Appellant and Williams could lead to immediate and deadly consequences for Eggu and his family. Having previously seen the handle of Appellant's gun, Eggu continued to fear he could be shot if he did not comply with the men's

demands. "The threat of force made to Mr. Eggu and his knowledge that [Appellant] possessed a gun were sufficient to find that Mr. Eggu was under the threat of immediate serious bodily injury when the two men took the $15,000 from his restaurant on that day." *Id.* at 9-10. Again, we agree with the trial court's conclusion that "the evidence presented at trial was more than sufficient for the jury to find [Appellant] guilty on Count Three of the Information." *Id.* at 10.

Viewing the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner, we agree the evidence was sufficient to support Appellant's robbery convictions under Section 3701(a)(1)(ii) for both Counts 2 and 3. Therefore, he is not entitled to relief on his second issue.

In his third issue, Appellant contends that his sentences for Counts 5 and 6, relating to theft by extortion, should have merged with his robbery convictions at Counts 1 and 3. The trial court agreed and noted the Commonwealth also conceded the offenses should have merged. Trial Court Opinion, 1/25/18, at 10. *See also* Commonwealth Brief at 18 ("the Commonwealth agrees that the sentences on these counts should be vacated while the sentences on the remaining counts should remain. Since the sentences on the theft charges were concurrent to the sentences on the robbery charges, the [s]entencing [c]ourt's ultimate sentence need not be

- 12 -

disturbed."). Therefore, the sentences imposed for Counts 5 and 6 are vacated.

In his fourth and final issue, Appellant challenges the legality of the sentence imposed for Count 6. We have already vacated that sentence but note the extortion charge for Count 6 should have been graded as a misdemeanor of the first degree because the jury did not assign a value to the theft at issue.

While we agree that Appellant's judgments of sentence on Counts 5 and 6 must be vacated, we recognize the sentence imposed for Count 5 was costs only, while the sentence imposed for Count 6 was one to two years in prison concurrent with the sentence for Count 4 and concurrent with the sentence for Count 1. Therefore, vacating the sentences for Counts 5 and 6 does not upset the overall sentencing scheme and a remand for resentencing is not necessary. *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006).

Judgments of sentence on Counts 5 and 6 vacated. In all other respects, Appellant's judgment of sentence is affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2018

- 13 -