**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Eddie FELICIANO, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 2013.

Filed May 14, 2013.

Eric J. Taylor, Public Defender, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., BOWES, GANTMAN, PANELLA, SHOGAN, LAZARUS, MUNDY, and OTT, JJ.

OPINION BY BOWES, J.:

Eddie Feliciano appeals from the judgment of sentence of seven years and three months to fourteen and one-half years incarceration imposed by the trial court after he was convicted of four counts of violating 35 P.S. § 780–113(a)(30), relating to delivery and possession with intent to deliver cocaine ("PWID"), two counts each of possession of cocaine and conspiracy to commit PWID, and one count of conspiracy to commit possession of cocaine. We affirm.

The trial court set forth the pertinent facts as follows.

On Monday, January 18, 2010, Detective Christopher Mayer of the Reading Police Department was working in an undercover capacity in the Vice Section handling drug transactions, among other matters. At the time, Detective [Pasquale] Leporace was also working in the Vice Section of the Reading Police Department. After receiving informa-

tion from a confidential source, Detective Leporace instructed Detective Mayer to accompany the confidential source to the 800 block of Locust Street in the City of Reading, Berks County, Pennsylvania, to attempt to purchase five bags containing cocaine from the Defendant.

A few moments after Detective Mayer and the confidential source arrived in the 800 block of Locust Street, the Defendant exited 848 Locust Street and walked to the passenger side of Detective Mayer's vehicle. Detective Mayer was driving a blue, late–80's model Chevrolet pickup truck. The Defendant approached the passenger side of the truck and handed the confidential source five bags containing a substance that subsequently tested positive for cocaine. Detective Mayer took the five packets from the confidential source and handed the Defendant $40 in pre-recorded U.S. currency. The Defendant walked away from the truck, and Detective Mayer and the confidential source went to the Vice Office, where Detective Mayer performed a preliminary Valtox test on the substance in the packets. The substance tested positive for cocaine. Detective Mayer then placed the five packets containing cocaine into an evidence envelope, which he sent to the Bethlehem Regional Laboratory for chemical testing.

On January 21, 2010, Detective Mayer returned to the 800 block of Locust Street with the confidential source around 2:30 p[.]m. Detective Mayer was again driving the same blue truck. After parking the truck, Detective Mayer encountered an unnamed Hispanic female (hereinafter "Jane Doe"). Detective Mayer stepped out of the truck and spoke with Jane Doe. She told the Detective, "He's bagging it up. He will be out." Jane Doe then walked into 848 Locust Street, and Detective Mayer re-

turned to the driver's seat of the truck. A few moments later, the Defendant exited 848 Locust Street, approached the truck, and got in on the passenger side. The Defendant instructed Detective Mayer to drive around the block. During the ride, Detective Mayer handed the Defendant $40 in pre-recorded U.S. currency in exchange for five bags containing a substance that subsequently tested positive for cocaine.

Trial Court Opinion, 8/19/11, 2–3 (internal citations omitted).

Thereafter, the Commonwealth charged Appellant with the aforementioned crimes and Appellant proceeded to a jury trial. At trial, over Appellant's objection, the court permitted the prosecution to introduce the statement made by the unknown female in which she told the undercover officer, "He's bagging it up. He will be out." N.T., 3/23/11, at 29. Additionally, the undercover officer testified as to the drug transactions and how he placed the cocaine sold to him in evidence envelopes and sealed them with evidence tape before placing them in the evidence section of his department. William MacLuckie, a forensic scientist, testified to receiving the sealed evidence envelopes and testing them for cocaine. The packets tested positively for cocaine, and he resealed the evidence envelopes and signed his name on the envelopes. The cocaine in those envelopes was admitted into evidence over Appellant's chain-of-custody objection.

The jury found Appellant guilty of all charges and the court sentenced him on two counts of delivery of cocaine and one count of conspiracy to commit PWID. The court imposed consecutive sentences of thirty-three to sixty-six months on the two delivery charges and a consecutive sentence of twenty-one to forty-two months for the conspiracy count for an aggregate

sentence of seven years and three months to fourteen years and six months imprisonment. This appeal ensued. The trial court directed Appellant to file and serve a concise statement of errors complained of on appeal and he complied. The trial court authored a Pa.R.A.P. 1925(a) opinion.

A panel of this Court, with this author dissenting, reversed and remanded for a new trial as to each of Appellant's convictions based on the admission of Appellant's co-defendant's statements, despite the fact that Appellant did not challenge all of his convictions on that ground. The Commonwealth petitioned for reargument and this Court granted that request. The matter is now ready for disposition. Appellant raises three issues for this Court's consideration.

A. Whether the evidence was insufficient to establish beyond a reasonable doubt that Appellant was guilty of conspiracy to commit delivery of a controlled substance, in that the Commonwealth failed to establish that Appellant entered into an agreement to commit or aid in an unlawful act with another person and/or that Appellant and the other person both had a shared criminal intent?

B. Whether the trial court erred in denying Appellant's motion *in limine* to exclude hearsay testimony from declarant Jane Doe, an alleged unidentified coconspirator, when the Commonwealth failed to prove the existence of a conspiracy between declarant and Appellant, that the statements were made during the course of the conspiracy, and/or that the statements were made in furtherance of a common design?

C. Whether the trial court erred in admitting into evidence the two envelopes of packets of cocaine where there were several gaps in the chain of custody, including any evidence about the transportation of the items at issue from city hall to the laboratory, any evidence about how the items came to the forensic scientist, where they went after he finished examining them, and any evidence about the transportation of the items from the laboratory to the courtroom for Appellant's trial?

Appellant's brief at 5.

■ Appellant's first contention relates to the sufficiency of the evidence for his conspiracy conviction. Our standard and scope of review for sufficiency challenges are well established.

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be

evaluated and all evidence actually received must be considered.

*Commonwealth v. Stokes,* 38 A.3d 846, 853–854 (Pa.Super.2011) (internal citations and quotations omitted).

■ Appellant argues that the Commonwealth's evidence was insufficient to show that either he or the unidentified female agreed with one another to deliver or aid in delivering the cocaine. In addition, he asserts that there was insufficient evidence to establish that he and the unknown female shared the requisite criminal intent. In forwarding his position, Appellant relies on *Commonwealth v. Anderson,* 265 Pa.Super. 494, 402 A.2d 546 (1979), and *Commonwealth v. Mills,* 329 Pa.Super. 196, 478 A.2d 30 (1984).

In *Anderson,* an undercover police officer approached the defendant and told him that he wanted to purchase some heroin. The defendant agreed to sell the officer eleven packets of heroin for fifty dollars. The undercover officer and the defendant then travelled to the defendant's apartment. The defendant's wife was sitting on the steps when the two men arrived. The defendant, in the presence of his wife and the officer, instructed the officer to give her the fifty dollars. The undercover officer turned over the money to the defendant's wife while the defendant entered the residence. The wife remained outside and the defendant returned and handed over eleven glazed packets of heroin in the presence of his wife. In reversing the conspiracy conviction, this Court opined that it could not infer that his wife had "any inkling concerning the nature of the transaction until appellant returned with the 11 bags." *Id.* at 550. The *Anderson* Court added that Appellant's instruction to the officer to give the money to his wife did not "indicate an impending illegal sale." *Id.* The Court reasoned that the passive holding of the money could not be

considered aiding the defendant because she lacked criminal intent. The panel in *Anderson* continued that the wife was "mute and unresponsive throughout the transaction[,]" and nothing was said to indicate that the packets contained heroin. *Id.* at 551.

This Court in *Mills, supra,* also reversed a drug conspiracy conviction. In that case, the defendant and his co-defendant attempted to purchase methamphetamine for an undercover officer. The officer and his informant initially travelled to the apartment of one of the informant's high school acquaintances. After leaving the apartment without being able to procure any drugs, the officer waited in his car and sent the informant back into the apartment. The informant, his acquaintance, and the appellant then exited the apartment and entered the undercover agent's vehicle. The informant's acquaintance gave directions to the home of an alleged source for the drugs, but he was not there. The defendant, who was a passenger in the vehicle, was charged with conspiracy.

In overturning the conviction, the *Mills* Court acknowledged that the evidence established that the defendant traveled to a house knowing that the undercover agent and his informant were seeking to purchase drugs. It also was cognizant that the defendant offered to obtain the methamphetamine himself in the future. Nevertheless, the *Mills* panel reasoned that there was no evidence that the defendant agreed with the informant's acquaintance to procure the drug or had previously engaged in the sale of methamphetamine with him, and posited that there were no statements by either alleged conspirator indicating a joint criminal intent to purchase drugs.

Appellant contends that under this authority, "both the defendant and his al-

leged conspirator must be proven beyond a reasonable doubt to have agreed to the conspiracy." Appellant's brief at 15 (discussing *Anderson*, supra). According to Appellant, "[u]pdating Mayer on where an unnamed male was and how soon he would be out was the only thing that the unknown female did[.]" Appellant's brief at 17. Appellant maintains that there was no evidence that the unidentified female was aware that Appellant was selling cocaine or shared the requisite criminal intent to sell or deliver narcotics. Furthermore, Appellant asserts that the trial court erroneously relied on this Court's decision in *Commonwealth v. Lambert*, 795 A.2d 1010 (Pa.Super.2002), to support his conviction. Therein, this Court set forth four factors to consider in deciding if a conspiracy existed. Those factors were: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Id.* at 1016.

Appellant claims that while he and the unknown female "had some sort of relationship," this fact does not establish a long and close relationship. Appellant's brief at 22. In addition, Appellant submits that the trial court improperly assumed the female knew that a drug transaction was set to occur based on her statement to the undercover officer, "He's bagging it up. He will be out." N.T., 3/23/11, at 29. Thirdly, Appellant insists that the unknown female was not present at the scene of the crime since the actual drug deal occurred inside the undercover officer's truck, when she was not present. Finally, Appellant posits that the young woman's statement does not show that she participated in the object of the conspiracy.

The Commonwealth counters that the evidence introduced at trial demonstrates that the unknown female entered the residence at 848 Locust Street immediately after the undercover agent arrived. She then returned and stated to the undercover officer, "He's bagging it up. He will be out." *Id.* Shortly thereafter, Appellant exited 848 Locust Street alone and approached the undercover officer's truck. Appellant entered the vehicle and a drug transaction transpired. After completion of the sale and delivery, Appellant walked back to 848 Locust Street with the unknown female, who at some point had returned outside. According to the Commonwealth, "[t]he natural inference from these actions is that the female entered the residence to check the status of the availability of the cocaine, and she relayed this information to the detective to keep him at that location until Feliciano could complete the delivery." Commonwealth's brief at 8. Thus, the Commonwealth submits that, when viewing this evidence in a light most favorable to it, sufficient evidence was introduced to establish a conspiracy. We agree.

Section 903 of the Crimes Code sets forth the crime of conspiracy.

> (a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903.

██ "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful

act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super.2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id.* Furthermore, Appellant's reliance on *Anderson* for the proposition that the Commonwealth is required to prove the guilt of both the defendant and his alleged conspirator to sustain a conspiracy conviction is no longer sound. *See Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980) (acquittal in separate trial of one coconspirator does not require reversal of conviction of other conspirator); *Commonwealth v. Campbell*, 539 Pa. 212, 651 A.2d 1096 (1994).

We cannot find that the evidence herein is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. A reasonable jury could rightfully infer that the unidentified woman was referring to Appellant when she stated, "He's bagging it up. He will be out." This inference derives from the fact that she entered and exited 848 Locust Street immediately before Appellant delivered the narcotics. Similarly, it is logical to conclude that the unknown female was aware that Appellant was bagging cocaine, as Appellant exited 848 Locust Street shortly after her statement and produced several bags of cocaine. Unlike *Anderson,* the female in the instant case was not mute and unresponsive or merely present at the location.

Additionally, contrary to *Mills,* she did make a statement that inculpated herself. She actively participated in informing the officer about the pending drug transaction. The statement, "He's bagging it up. He will be out[,]" must be viewed in the context of the entire factual scenario. When so doing, it is sufficiently evident that Appellant entered into an agreement with the young woman with the shared criminal intent of selling cocaine, and he committed the necessary overt act by selling the drug. Jane Doe was present and aware of the crime and participated in it by informing the officer to wait rather than drive away. Appellant's alternative hypotheticals disregard this Court's standard of review, which requires us to view the evidence in a light most favorable to the Commonwealth. Accordingly, we hold that Appellant's first issue does not entitle him to relief.

■ Appellant's next challenge is to the introduction of the unknown female's statement, "He's bagging it up. He will be out." Appellant argues that because the Commonwealth failed to establish a conspiracy, it could not introduce the alleged co-conspirator's statement as an exception to the hearsay rule. In leveling his argument, Appellant contends that the trial court made several "unfounded assumptions." Appellant's brief at 27. Specifically, Appellant asserts that the court assumed the woman was referring to Appellant, that Appellant told her to speak with the undercover officer, that she knew that Appellant would be delivering cocaine, and that she "was not simply an addict who was trying to curry favor with Feliciano[.]" *Id.* at 28.

The Commonwealth replies that to establish the admissibility of a coconspirator's statement, it is not required to prove beyond a reasonable doubt that a conspira-

cy existed. Rather, it must only show by a preponderance of the evidence that a conspiracy existed. *Commonwealth v. Greene*, 702 A.2d 547 (Pa.Super.1997). Furthermore, "the Commonwealth need not establish such a preponderance by direct evidence. Rather, a conspiracy, for purposes of the co-conspirator exception, may be inferentially established by showing the relation, conduct or circumstances of the parties." *Id.* at 556.

The Commonwealth contends that it demonstrated that a conspiracy existed by showing that when the undercover officer arrived and exited his vehicle, the unknown female entered 848 Locust Street and then came back outside and told the officer, "He's bagging it up. He will be out[,]" before reentering the residence, and Appellant soon thereafter exited and delivered the cocaine. Additionally, the Commonwealth opines that the statement was not hearsay because it was not offered to prove that Appellant was bagging the drugs, but instead was introduced "to demonstrate the existence of the conspiracy between the two." Commonwealth's brief at 11.

■■■ Our standard of review relative to the admission of evidence is for an abuse of discretion. *Commonwealth v. Cain*, 29 A.3d 3 (Pa.Super.2011). This Court has previously articulated the requisite standard for admitting a co-conspirator's hearsay statement as follows.

To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy existed between declarant and the person against whom the evidence is offered and (2) the statement sought to be admitted was made during the course of the conspiracy. In addition, there must be evidence other than

the statement of the co-conspirator to prove that a conspiracy existed. *Commonwealth v. Basile*, 312 Pa.Super. 206, 458 A.2d 587 (1983).

The order of proof is within the discretion of the lower court, which may, upon only slight evidence of the conspiracy, admit such statements subject to later proof of the conspiracy. *Commonwealth v. Plusquellic*, 303 Pa.Super. 1, 449 A.2d 47 (1982).

*Commonwealth v. Kersten*, 333 Pa.Super. 343, 482 A.2d 600, 603 (1984).

■■■ Simply put, only slight evidence of the conspiracy is needed for a coconspirator's statement to be introduced and the order of proof is discretionary. A co-conspirator's statement is only inadmissible where it is the sole evidence of the conspiracy. That is simply not the case herein. Although the co-conspirator's statement was essential to establishing the conspiracy beyond a reasonable doubt, it was not the exclusive evidence that a conspiracy existed. Before Appellant exited his residence to deliver the drugs, Jane Doe exited the same residence and approached the officer. Appellant, in accordance with Jane Doe's statement, followed soon thereafter. As soon as Appellant completed his delivery of the drugs, he rendezvoused with Jane Doe and reentered the premises that they both had exited before the drug delivery. The surrounding actions of Appellant and Jane Doe immediately before and after the drug transaction is some evidence of a conspiracy. Thus, the Commonwealth demonstrated by a preponderance of the evidence that a conspiracy existed. Hence, the statements were admissible pursuant to the co-conspirator exception to the hearsay rule. *Commonwealth v. Johnson*, 576 Pa. 23, 838 A.2d 663 (2003); Pa.R.E. 803(25)(E).[1]

1. The then applicable version of Pa.R.E. 803(25)(E) read:

Finally, Appellant asserts that the trial court erred in admitting into evidence two envelopes that contained the packets of cocaine purchased from Appellant because there were gaps in the chain of custody. We have already stated our standard of review for an evidentiary issue and need not reiterate it. Appellant posits that, "[t]he Commonwealth's chain of custody is nonexistent from Mayer placing the substances in an envelope until it resumes, albeit briefly, with MacLuckie, before disappearing again, until both exhibits magically reappear without explanation at Feliciano's trial." Appellant's brief at 31. Appellant relies extensively on *Commonwealth v. Pedano*, 266 Pa.Super. 461, 405 A.2d 525 (1979), and argues that the Commonwealth fell "well short of what is required to prove a chain of custody." Appellant's brief at 32.

In *Pedano*, this Court reversed a conviction after finding that the Commonwealth did not show any chain of custody for a rolled fingerprint impression card. Therein, a Detective Greco testified that he took the defendant's fingerprints on a rolled impression card. Another detective, Detective Dunlap, stated that he turned over a rolled impression card to a Detective Olanin. Detective Olanin, who was called as a fingerprinting expert, did not testify that the card he examined was the one taken by Detective Greco. Detective Greco also failed to state that he handed his impression card to Detective Dunlap, and Detective Dunlap did not provide that he turned over an impression card to Detective Olanin. Based on this evidence, the *Pedano* Court ruled that there was a "yawning chasm" in the chain of custody relative to the rolled impression card and that the Commonwealth failed to lay a proper foundation for its introduction. *See Pedano, supra* at 528.

Appellant reasons that the Commonwealth failed to adequately prove the chain of custody since it did not set forth who sent the envelopes or how the evidence was transported to the testing lab or how the evidence was received or returned from that lab. He also maintains that because there was an absence of testimony about how the organization of the evidence section in which the officer placed the sealed envelopes was kept or who had access to that area, the chain of custody was not proven.

The Commonwealth responds that Appellant's allegation goes to the weight to be afforded the evidence and that it sufficiently established the chain of custody. It highlights that the undercover officer recognized the individual packets of cocaine at trial, testified where he placed the packets inside of evidence envelopes and sealed the envelopes with red evidence tape and marked them with his initials. The envelopes introduced at trial revealed his initials. Further, William MacLuckie, the forensic scientist who tested the cocaine, testified that the evidence tape was intact when he received the envelopes. He personally opened the envelopes and tested the materials before placing the cocaine back into the evidence envelopes and re-

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

"(25) Admission by party-opponent. The statement is offered against a party and is. . . .

(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement may be considered but are not alone sufficient to establish . . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)."

sealing them with blue tape, placing his signature and date on the tape. At trial, the envelopes containing the cocaine were marked with his signature. Accordingly, the Commonwealth posits that there was ample evidence proving the cocaine introduced at trial was the cocaine from the two drug deliveries.

We find Appellant's issue to be meritless and, for the reasons delineated by the Commonwealth, hold that the chain of custody was more than sufficient. Here, the officer who recovered the drugs testified that he placed the evidence into evidence envelopes and secured them with evidence tape and signed the envelopes. Those envelopes arrived for testing still sealed. The forensic scientist who tested the drugs also testified that he resealed the envelopes and placed his signature on the envelopes, which were in that condition when the Commonwealth introduced them at trial. There simply is no indication that the drugs introduced at trial were not the drugs Appellant sold. *See Commonwealth v. Martin,* 277 Pa.Super. 326, 419 A.2d 795, 798 (1980) ("There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remain unimpaired until they were surrendered to the court."). Furthermore, in contrast to *Pedano, supra,* both the officer who collected the drugs and the expert who tested the narcotics were able to confirm that the evidence envelopes were the envelopes they used.

■ Moreover, "There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. Physical evidence may be properly admit-

ted despite gaps in testimony regarding custody." *Commonwealth v. Jenkins,* 231 Pa.Super. 266, 332 A.2d 490, 492 (1974) (internal citations and quotations omitted). Pointedly, this Court has upheld the chain of custody based on less testimony. *See Martin, supra* at 797–798. Lastly, Appellant incorrectly argues this issue as though it were related to the admissibility of the evidence. Gaps in the chain of custody, the underlying issue of Appellant's argument, go to the weight of the evidence and not its admissibility. *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 256 (1998). For the foregoing reasons, we affirm.

Judgment of sentence affirmed.