**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY R. WRIGHT | : | |
| | : | |
| Appellant | : | No. 1711 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 26, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007920-2017

BEFORE: PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.: **FILED: APRIL 20, 2020**

Timothy R. Wright appeals from the judgment of sentence entered on August 26, 2019, in the Court of Common Pleas of York County, following his jury conviction of one count of possession with intent to deliver cocaine ("PWID").[1]  On appeal, Appellant avers the trial court erred in admitting the drug evidence and lab report because the Commonwealth failed to show a complete chain of custody.  After review, we affirm.

As we write primarily for the parties, we provide only those facts necessary for the disposition of this appeal.  On August 9, 2017, undercover police officers observed Appellant sell cocaine to a confidential informant (CI) in York City, Pennsylvania.  Immediately following the sale, the CI turned the

---

[1] 35 P.S. § 780-113(a)(30).

drugs over to police who conducted a field test on the substance. The test showed a positive presumptive indication of cocaine. The police forwarded the substance to the State Police Crime Laboratory, where lab technician Nicole Blascovich confirmed the substance was cocaine.

At trial, Appellant appeared *pro se*, accompanied by stand-by counsel. Following deliberations, the jury convicted him of PWID. On August 26, 2019, the trial court sentenced Appellant, who was now represented by counsel, to eighteen to thirty-six months' imprisonment. On September 3, 2019, Appellant filed post-sentence motions, which the trial court denied. On October 8, 2019, Appellant filed the instant, timely appeal. The trial court directed Appellant to file a concise statement of errors complained of on appeal, and Appellant complied. The trial court then filed its opinion.

On appeal, Appellant challenges the trial court's decision to admit the drug evidence and laboratory report because the Commonwealth failed to demonstrate a complete chain of custody. *See* Appellant's Brief, at 10-12.

The standard of review for challenges to the admissibility of evidence is settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (citations and quotation marks omitted).

We have held, "[p]hysical evidence may be properly admitted despite gaps in testimony regarding custody." *Commonwealth v. Feliciano*, 67 A.3d 19, 29 (Pa. Super. 2013) (*en banc*). Furthermore, any issue regarding gaps in the chain of custody relate to the weight of the evidence, not its admissibility. *See id.* Also, "[t]here is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remain unimpaired until they were surrendered to the court." *Id.* (citation omitted). Because of this, we do not require the Commonwealth to call as witnesses all of the people who came into contract with the item in question. *See id.*

In *Feliciano*, the defendant sold drugs to a CI. *Id.* at 21. At trial, the detective working undercover with the CI testified the CI gave the drugs to him immediately following the sale; after conducting a preliminary field test, the detective placed the drugs into an evidence envelope, which he sealed and placed into the evidence section of his department. *Id.* at 22. A forensic scientist also testified he received the sealed envelope, tested the substance, then placed it back into the envelope, which he resealed and signed. *Id.* The trial court admitted this into evidence over the defendant's chain of custody objection. *Id.*

An *en banc* panel of this Court determined defendant's chain of custody claim was "meritless" and the evidence adduced at trial was "more than sufficient." *Id.* at 29. We held where the detective who recovered the drugs placed them in a sealed envelope and signed it, the evidence arrived at the lab still sealed, the forensic scientist testified he resealed the envelope and signed it, and the envelopes arrived still sealed at trial, "[t]here was simply no indication that the drugs introduced at trial were not the drugs Appellant sold." *Id.* (citation omitted).

Here, the trial court described the evidence educed at trial with respect to chain of custody as follows:

> Ample evidence proved the chain of custody was sufficient and the drugs introduced at trial were the drugs sold by [Appellant]. Based on the trial record, before the buy happened, [Sergeant Adam] Bruckhart searched the [CI] to make sure "there was nothing on him"—no drugs, no money, and no contraband or weapons was found on the CI. N.T. Jury Trial, 07/16/19, at 64, 78, 80-81. [Sergeant] Bruckhart then arranged for the CI to go with Detective [Michelle] Hoover. *Id.* at 64-65, 76-77. Both [ ] Bruckhart and Hoover, in plain view, observed the transaction that [Appellant] sold crack cocaine to the CI. *Id.* at 64-65, 77-78. After the transaction occurred, the CI returned to the car and was driven back to the office by Detective Hoover. *Id.* at 83. The crack cocaine was turned over to Detective Hoover, and then to [Sergeant] Bruckhart. *Id.* at 65, 78, 83-84. [Sergeant] Bruckhart again searched the CI—"no drugs, no money, no contraband, and no weapons were found on the CI." *Id.* at 65, 78, 83. [Sergeant] Bruckhart established that the transaction did occur and the drugs obtained were transferred from [Appellant].
>
> After [Sergeant] Bruckhart received the drugs, he placed the drugs in the envelope, put on the "red evidence tape," wrote down the case number, date, the suspect's name, and signed his name. *Id.* at 84. A witness was present when [Sergeant] Bruckhart sealed the evidence. *Id.* [Sergeant] Bruckhart recognized the

envelope at trial and confirmed that "everything [was] logged into the evidence and on the actual evidence bag." *Id.* Detective Hoover confirmed [Sergeant] Bruckhart's testimony at trial. *See* N.T. Jury Trial, 07/17/19, at 126-28.

The lab technician ("lab tech"), Nicole Blascovich, who did the testing of the drugs was present and testified as an expert witness at trial. The lab tech recognized the photocopy of her lab report for this case, and confirmed it was "a true and accurate copy of the report that [she] issued in this case." N.T. Jury Trial, 07/16/19, at 106. She also identified the "lab report number" and the "incident number" on the report. *Id.* at 106[-]07. The lab tech acknowledged the same envelope identified by [Sergeant] Bruckhart and the plastic bag containing the drugs she described in her report. *Id.* at 108. She further stated that the evidence came to the lab in a sealed envelope and was assigned the unique "lab report number," which is a barcode. *Id.* The lab would scan the barcode every time when they moved the evidence, so they could "generate a chain of custody when it [moved] around the lab as far as who [had] it, where it [was] and when." *Id.* at 108-09. The lab tech indicated that, after the testing was complete, she "repacked it back in the plastic bag it came in and wrote [her] initials, the lab report item number, *sealed it up*, put it back in the envelope, [and] sealed it up." *Id.* at 112 (emphasis added).

Trial Court Opinion, 11/15/19, at 5-6.

We have thoroughly reviewed the record in this matter. The trial court opinion accurately described Commonwealth's evidence regarding chain of custody. The evidence here is all but identical to that discussed in *Feliciano*. Therefore, because there is no meaningful difference between the evidence here and the evidence this Court found "more than sufficient" in *Feliciano*, that decision controls the outcome here. *Feliciano*, 67 A.3d at 29. Moreover, because it is an *en banc* decision, it is binding on this panel. *See In the Interest of A.A.*, 195 A.3d 896 (Pa. 2018) (citations omitted) (decision of *en banc* panel is binding on three-judge panel). Lastly, in his brief argument on

this issue, Appellant fails to discuss or even mention ***Feliciano***, or point to any case law that would call its holding into doubt. Appellant's claim does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/20/2020