J-S19028-23

2023 PA Super 208

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LASTACIA MARIE GRIFFITH | : | |
| | : | |
| Appellant | : | No. 1106 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 6, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005762-2021

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.:               **FILED OCTOBER 19, 2023**

Lastacia Marie Griffith appeals from the judgment of sentence entered following her conviction for theft of property lost, mislaid, or delivered by mistake.[1] Griffith argues that the evidence was insufficient to support the conviction. We affirm.

Following an incident in October 2021, Griffith was charged with the above crime and proceeded to a bench trial. At trial, Jocelyn Murphy ("the victim") testified that she and Griffith both attended a Halloween party in York City and afterward, there was a physical altercation between her and one of Griffith's friends. N.T., 7/6/22, at 4-5, 7. The victim stated that Griffith and another person joined in, fighting against the victim. *Id.* at 7. The victim testified that after the altercation, she was taken to the home of one of Griffith's family members where a second altercation occurred, involving

---

[1] 18 Pa.C.S.A. § 3924.

Griffith, Murphy, and others. *Id.* at 9, 10, 16-17, 32. The victim said the police came and arrested every person involved. *Id.* at 10.

She further testified that after the second altercation, she realized that she had lost her navy blue iPhone 12 cell phone. *Id.* at 10-11. The victim said that she, her mother, and her best friend "called it [and Griffith] answered." *Id.* at 11. The victim said that when she later called the phone again, there was no answer. *Id.* at 12. She testified that she called Griffith the next day via Facebook Messenger, and Griffith said that the victim was "not getting [her] phone back, that it's gone, and . . . to press charges," and hung up. *Id.* The victim said she asked "nicely if [Griffith] could just return the phone," and Griffith "said no. It's gone." *Id.* at 12-13.

The Commonwealth played a video recording of the victim conducting the Facebook Messenger call. *Id.* at 19. It showed the victim asking, "Can I come get my phone that y'all stole?" Com.'s Exhibit 1. Griffith responded, "It's gone bitch, next." The victim then asked, "So y'all damaged it?" Griffith tersely answered, "Tell your mom to press charges," and hung up. *Id.*

The victim never got her phone back and bought a new one for $1,000. *Id.* at 13-14. The victim also testified that a mutual friend of hers and Griffith called Griffith to ask her to return the phone, and Griffith refused. *Id.* at 14.

The day after the party, the victim contacted York City Police and spoke with Officer Ross Casteel. *Id.* at 21-22. Officer Casteel testified that he attempted to call the victim's lost phone but was unable to connect and he believed the phone had been turned off. *Id.* at 22. Officer Casteel stated that

the victim showed him what appeared to be a screenshot of a "ping" of the phone's location. *Id.* at 22-23. He recalled that the location of the ping was near Griffith's home. *Id.* at 24, 25. Officer Casteel testified that Griffith did not answer when he attempted to contact her on Facebook Messenger. *Id.* at 23.

Griffith testified in her own defense. She stated that the second altercation happened near her home. *Id.* at 32. According to Griffith, after the arrests, she was walking home with a cousin when they found a ringing phone on the ground. *Id.* at 32-33. She said that after the party she also had lost her phone, and her cousin picked up the phone believing it was Griffith's phone because she and the victim had "the same phones." *Id.* at 33, 36, 37. Griffith said when the phone rang, her cousin answered it and "she answered, or whoever answered the phone." *Id.* at 33. Griffith testified that they realized it was not her phone and "threw the phone back wherever it was and left it there and haven't seen the phone since." *Id.* Griffith said she heard yelling when her cousin answered the phone, and she "tossed the phone back on the floor, and [she] felt as though whoever was responsible for their phone, that was on them." *Id.*

Griffith testified that she knew the victim had lost her phone prior to the Facebook Messenger call because a family member had told her. *Id.* at 39. She stated that she told the victim, "[I]t's gone. Take it as a loss." *Id.* Griffith said she told the victim to press charges "[b]ecause she already threatened to press charges. She said I'm going to have my mom press charges. I'm

basically telling her do what you have to do because I don't have her phone."

*Id.*

The trial court convicted Griffith of one count of theft of property lost, mislaid, or delivered by mistake. *Id.* at 44. The court found:

> [Griffith] was made aware that the [v]ictim had lost her phone via Facebook Messenger calls from the [v]ictim. [Griffith], in response to these calls, claimed that the phone was gone and hung up on the [v]ictim . . . [.] [B]ecause [Griffith] was aware that the phone was lost, claimed the phone was gone, and hung up on the victim, [Griffith] possessed the requisite intent to deprive the [v]ictim of her property.
>
> . . .
>
> [Griffith] was aware that the phone she picked up was lost or mislaid. The recording of the phone call corroborated the victim's testimony. While [Griffith's] testimony was that multiple people lost personal property the evening of the altercations with the [v]ictim, we do not find [Griffith's] version of events to be credible. [Griffith] testified that she knew the phone was not hers. Further, [Griffith] even noted that the [v]ictim was "harassing" her regarding the lost phone. Therefore, the evidence was sufficient to establish that [Griffith] knew that the cell phone in question was lost or mislaid property.
>
> . . .
>
> [Griffith] noted that her cousin had picked up a phone assuming it belonged to [Griffith]. Upon realizing that the phone did not belong to [Griffith], they threw the phone back on the ground. [Griffith] had a phone call with the [v]ictim wherein she told the victim that the phone was gone. At no point during the conversation with the victim did [Griffith] tell her that she had found a phone on the ground and where the victim could go to look for that phone. Additionally, [Griffith], being aware of the value of an iPhone, failed to take affirmative steps to secure the phone she found on the ground. As noted by her own testimony, [Griffith] simply threw the phone back on the ground where

she found it. Therefore, the evidence was sufficient to establish that [Griffith] failed to take reasonable measures to restore the property to the person entitled to have it.

Trial Court Opinion, filed Sept. 29, 2022, at 5-7 ("1925(a) Op.").

The trial court sentenced Griffith to one year of probation and restitution in the amount of $1,000.[2] Griffith timely appealed.

Griffith raises the following issue:

Whether there was insufficient evidence to convict Ms. Griffith of theft of lost or mislaid property where Ms. Griffith did not demonstrate the requisite intent to deprive the complainant of her property and because the Commonwealth did not provide sufficient evidence to establish Ms. Griffith failed to take a reasonable measure to restore the property when she left it where she found it?

Griffith's Br. at 4.[3]

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a

_____

[2] The Court stated that, if restitution was paid, the probationary period may end after six months. N.T. at 47-48.

[3] Griffith's Pa.R.A.P. 1925(b) statement also included a challenge to the sufficiency of the evidence to support a finding that she knew the property had been lost or mislaid. However, Griffith does not argue the issue in her brief. She has therefore abandoned it and we will not address it.

reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018). In conducting this analysis, we may not substitute our judgment for that of the factfinder. ***Id.*** at 1230. Additionally, the Commonwealth's evidence "need not preclude every possibility of innocence." ***Feliciano***, 67 A.3d at 23 (citation omitted). The factfinder is free to believe all, part, or none of the evidence. ***Id.***

Griffith argues the Commonwealth failed to present sufficient evidence to sustain the conviction for theft of lost or mislaid property. She argues that the evidence merely showed that she interacted with the phone after the second altercation. In her view, it did not show an intent to deprive the victim of the phone. Griffith claims that her statements that the phone was "gone" and that the victim should press charges were expressions of frustration and not evidence of an intent to deprive the victim of the phone. She asserts that her statements reflected her beliefs that the phone was gone and that the animosity stemming from recent altercations with the victim would inevitably lead the victim to press charges. She further argues that the act of picking up the phone, answering it, and putting it back where it had been lying it did not demonstrate either that she had the intent to deprive or that she knew that it belonged to the victim.

Griffith also argues that leaving the phone where she found it was a reasonable measure to return the phone to its owner. She contends that she

was not obligated to help the victim to find the phone, and that the record does not reveal an effort by Griffith to conceal it from the victim. Griffith maintains she did not lie about the phone's whereabouts or actively mislead the victim regarding the phone. She also contends that her actions did not amount to abandonment of the phone, and leaving it where it was made it more likely that the owner would find it, as compared to attempting to find the owner.

The statute criminalizing theft of property lost, mislaid, or delivered by mistake provides:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with the intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S.A. § 3924.

"Deprive" has several meanings for purposes of Section 3924, including "to dispose of the property so as to make it unlikely that the owner will recover it." 18 Pa.C.S.A. § 3901.[4] "[I]ntent can be proven by direct or circumstantial

---

[4] "Subject to additional definitions contained in subsequent provisions of this chapter which are applicable to specific provisions of this chapter, the following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

'Deprive.'

  (1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

*(Footnote Continued Next Page)*

evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Franklin***, 69 A.3d 719, 723 (Pa.Super. 2013) (quoting ***Commonwealth v. Faulk***, 928 A.2d 1061, 1070 (Pa.Super. 2007)).

Griffith's arguments lack merit. First, there was enough evidence to prove that Griffith had "the intent to deprive the owner" of the phone. The testimony was that there was a fight during which Griffith and the victim were on opposing sides. After a second fight, Griffith discovered the phone near her home, which was near the scene of the second altercation. She later learned that the victim had lost her phone. The victim contacted her and in response to the victim's asking if should get her phone "that y'all stole," Griffith said, "It's gone, bitch. Next." The victim then asked Griffith if she had damaged it, and she told her to press charges and hung up. This evidence was sufficient – when viewed in the Commonwealth's favor – to prove inferentially, beyond a reasonable doubt, that Griffith had the intent to deprive the victim of her phone.[5]

---

(2) to dispose of the property so as to make it unlikely that the owner will recover it."

18 Pa.C.S.A. § 3901.

[5] The dissent misinterprets our decision. We do not hold that "by failing to take reasonable measures to return [the phone] after controlling it," Griffith "must have had the intent to deprive Murphy of [it.]" Dissenting Opinion at 2. Contrary to the dissent's characterization, we find the *mens rea* met by the plethora of evidence that Griffith not only knew Murphy's phone was lost, but repeatedly informed Murphy that the phone was "gone," that is, that Murphy

*(Footnote Continued Next Page)*

Second, the Commonwealth presented sufficient evidence to prove that Griffith failed to take reasonable measures to "restore" the property. According to her own testimony, Griffith tossed it on the ground after determining it was not hers. *See* N.T. at 33.[6] She made no effort to see that it got back to the victim, such as alerting law enforcement or telling the victim where she had found it. She failed to do anything to "restore" the phone to its rightful owner even though she knew the victim's phone was missing and she had found the phone close to the site of the second altercation. Yet according to Griffith, she was aware that the phone matched the description of the victim's phone. The evidence was sufficient to prove that Griffith failed "to take reasonable measures to restore the property to a person entitled to have it."

Judgment of sentence affirmed.

Judge Sullivan joins the opinion.

President Judge Emeritus Bender files a dissenting opinion.

_____

would be permanently deprived of it. The dissent's hypotheticals are, respectfully, inapt. Griffith was not a stranger, and beyond her and her cousin's throwing the phone down, she also made subsequent statements and took actions towards Murphy that were sufficient to establish her "intent to deprive the owner" of the phone.

[6] The trial court states generally that it found Griffith's version of events not credible but appears to have credited at least her testimony that she threw the phone back on the ground. *See* 1925(a) Op. at 7.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/19/2023