J-S24028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAYLA MARIE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1520 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 1, 2024
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001276-2023

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED: October 7, 2025**

Kayla Marie Williams appeals *pro se* from the judgment of sentence entered following her summary conviction for defiant trespass.[1] We affirm.

At Williams's bench trial, Michelle Kraynak testified that she worked as a front office assistant at the MedExpress Urgent Care in Peters Township. N.T., Nov. 1, 2024, at 5. She testified that in March 2023, Williams came in for an appointment. *Id.* at 5-6. She stated that while Williams was in a back room for her medical appointment, Kraynak found a letter of termination in Williams's chart in the computer system. *Id.* at 7. The letter was dated February 10, 2023, and addressed to Williams. *Id.* at 10. It stated that it had come to MedExpress's "attention that on Friday, February 3, 2023, [Williams] engaged in behavior which was disruptive and inappropriate," and "[f]or the

---

[1] 18 Pa.C.S.A. § 3503(b)(1)(i).

safety and well-being of our staff and patients, we are unable to tolerate intimidating or disruptive behavior in our urgent care clinics, or via virtual care." *Id.* at 10-11. The letter stated that MedExpress would be "unable to continue to provide [Williams] with medical care, and ask[ed] that [she] not present to a MedExpress Urgent Care Center, or request a virtual visit." *Id.* at 11.

Kraynak showed the doctor the letter, and the doctor decided to continue to treat Williams that day. *Id.* at 12. When Williams checked out, Kraynak gave her the notes from that day's visit and provided her with a copy of the letter and reminded her that she was not allowed on MedExpress premises. *Id.*

Kraynak testified that when Williams's test results came in, the doctor gave her the results by phone and told her that she could enter MedExpress to pick up a physical copy of the results but would not be allowed to be seen for further treatment. *Id.* at 13.

Kraynak testified that in May 2023, Williams came to the MedExpress and asked for an appointment. *Id.* at 13-14. Kraynak told Williams that she could give Williams the test results but that Williams could not be seen by a provider. Kraynak stated that Williams "got very aggressive, stating that [they] were being racist." *Id.* at 15. Kraynak testified that Williams got her phone out and tried to make a video. *Id.* Kraynak agreed that Williams raised her voice and used curse words. *Id.* Kraynak testified that she asked Williams to leave at least 10 times and that she stayed for 15 to 20 minutes. *Id.* at 16.

Kraynak stated that there was another worker at the front desk, a nurse came from the back, and there were three to four patients in the waiting room. *Id.* Kraynak said they called the police because Williams would not leave. *Id.* at 17.

On cross-examination, Kraynak testified that Williams had permission to enter the MedExpress to pick up her test results. *Id.* at 19-20. She further stated that MedExpress does not have cameras. *Id.* at 20.

A former nurse at the Peters Township MedExpress, Dina Wass, testified that in May 2023, she was working when Williams entered the premises. *Id.* at 22-23. She said she was in the back and knew "there was something going on" that "at first . . . wasn't too bad," but then she heard the "commotion increase." *Id.* at 24-25. She stated that it "had gone on for so long," that she went to see what was going on. *Id.* at 25. She testified she went into the waiting room and saw Williams, and saw another patient "kind of approaching" Williams. *Id.* at 25-26. Wass testified that she asked if they were together and when she learned they were not, she put her arms out and told Williams she had to leave. *Id.* at 26. When asked if it appeared that the individuals were in a verbal confrontation, Wass stated, "Possibly, yes, it was just not normal." *Id.* She testified that Williams had her phone in Wass's face, and that Willaims kept yelling at her, "You're inferior." *Id.* at 27. Wass testified she got Williams to go into the vestibule and to leave the building. *Id.* Wass testified she asked Williams to leave about five times, and Williams kept yelling. *Id.* at 28. She stated her interaction with Williams lasted about two

minutes. *Id.* at 30-31. She testified the Peters Township MedExpress does not have cameras. *Id.* at 31.

A patient at MedExpress, Cheryl Whitehead, testified that at the time of the incident she was seated about five feet away from the check-in window. *Id.* at 33. She stated there were three or four other sets of people in the waiting room. *Id.* at 34. She said Williams kept asking to be tested, and that Williams escalated the conflict, while the employees at the front desk did not yell back. *Id.* at 35. Whitehead testified that Williams was recording the incident. *Id.* at 36. She said Williams was there when she arrived, and the conflict lasted eight to 10 minutes after she arrived. *Id.* at 34, 36. Whitehead stated that she did not get involved, but did pay attention. *Id.* at 36. She testified that she stood up when Williams said she was going to get something from her car. *Id.* at 37. She agreed that a MedExpress employee came into the waiting room and escorted Williams out. *Id.* at 38. She stated the employee asked Williams to leave a couple times. *Id.*

Williams testified that prior to the March 2023 visit she had not known that she was not allowed at MedExpress locations, and she had not received the letter that was in her chart. *Id.* at 45. She testified that when the employee informed her of the letter, she told the employee that she had never been to the MedExpress location mentioned in the letter. *Id.* at 46. She testified that she went to MedExpress in May 2023 to retrieve her medical records, and had confirmed three or four times that she could pick them up. *Id.* She testified that when she arrived she asked for her medical records, and

they told her that they were refusing to give her the paperwork, that she was not privileged to be there, and that she had to leave. *Id.* at 47. She testified she asked if she "[c]ould . . . at least speak to the doctor . . . about [her] concerns," and they said no. *Id.* She testified she was there for one to two minutes. *Id.* at 48. She testified she was not "outwardly angry" and was not yelling. *Id.* at 55-56. On re-direct, Williams said that MedExpress had cameras, stating "there's a few really big cameras in the lobby." *Id.* at 61.

The trial court found Williams guilty of criminal trespass.[2] The court sentenced Williams to pay a fine of $300.00. She appealed.[3]

In her brief, Williams states the following as reasons for her appeal:

a.) Insufficient Evidence

b.) Improper Admission of Hearsay Evidence

c.) Inconsistent Testimonies by the Witnesses

d.) Legal Errors by Judge Costanzo

e.) Misconduct by Judge Costanzo

f.) Improper Prosecutorial Conduct by the District Attorney(s)

g.) False Testimonies by the Witnesses

h.) Improper Exclusion of Defense Evidence

---

[2] The court found Williams not guilty of disorderly conduct.

[3] Following trial, the court granted counsel's motion to withdraw. Williams filed a *pro se* post-trial motion. The trial court denied the motion, reasoning that because Williams was convicted of a summary offense, she was precluded from filing post-sentence motions. Order, filed Nov 21, 2024 (citing *Commonwealth v. Dougherty*, 679 A.2d 779, 784 (Pa.Super. 1996) and Pa.R.Crim.P. 720(D)).

> i.) The District Attorney(s) Withholding Exculpatory Evidence
>
> j.) Obvious Bias by the Witnesses for Why They Lied
>
> k.) Ineffective Assistance of Counsel
>
> l.) Conflict of Interest Between My Attorney that Represented Me and the District Attorney(s) that I was not made aware of before the November 1st hearing.

Williams's Br. at 1.

Williams waived all issues except her challenge to the sufficiency of the evidence. A 1925(b) statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). A concise statement that "is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa.Super. 2018) (citation omitted). Where a Rule 1925(b) statement fails "to identify with sufficient detail the issues to be raised on appeal, . . . those issues are waived." ***Commonwealth v. Parrish***, 224 A.3d 682, 701 (Pa. 2020).

In her Rule 1925(b) statement, Williams raised issues identical to those listed in her appellate brief. Her issues as stated failed to specify the alleged hearsay, trial court errors or misconduct, improper prosecutorial conduct, false testimony, excluded evidence, withheld evidence, bias, ineffectiveness, or conflict of interest that she intended to challenge. Other than her sufficiency claim, the issues listed in the Rule 1925(b) statement were vague and did not

allow the trial court to identify the issues. Williams therefore waived the issues for appellate purposes. *See* Pa.R.A.P. 1925(b)(4)(vii).

Williams also challenges the sufficiency of the evidence to support her summary trespass conviction. She argues the Commonwealth presented "no real evidence" to support the conviction. Williams's Br. at 2 (emphasis removed). She claims the court based its decision on inconsistent witness testimony, and that the witnesses lied and changed their testimony. Williams claims she cannot be found guilty beyond a reasonable doubt based on the testimony of non-credible witnesses who "were caught lying/changing their stories multiple times." *Id.*

To the extent this issue challenges the court's credibility findings and is based on alleged inconsistent testimony, it raises a challenge to the weight of the evidence. To the extent it challenges the sufficiency of the evidence, we find the claim lacks merit.

A weight claim must be presented to the trial court in the first instance on pain of waiver, usually in a post-sentence motion, except in appeals from summary convictions. There is an exception for summary convictions because a criminal defendant who has been convicted of a summary offense – such as Williams – cannot file post-sentence motions. In such a case, we will entertain the weight issue without remand if the trial court has already addressed it. *See Commonwealth v. Damerjian*, No. 2055 EDA 2022, 2023 WL 4103986, at *2-*3 (Pa.Super. 2023) (unpublished mem.) (citing *Commonwealth v.*

*Dougherty*, 679 A.2d 779, 784-785 (Pa.Super. 1994)). As the trial court has already considered Williams's weight argument, we will review it.

Williams claims that the witnesses said that she entered MedExpress without being given permission to do so, but alleges the witnesses "were caught during questioning . . . to admitting they gave [her] permission that day to enter." Williams's Br. at 2. She next claims that one witness said Williams had an argument with other patients, but other witnesses admitted that she had not argued with other patients. *Id.* at 3. She further claims the witnesses lied when they said there were no cameras in the MedExpress lobby. *Id.* In addition, Williams claims that "in the discovery" a witness said Williams leaned her head over the front desk counter. *Id.* She argues this could not have happened as there were blockers over the front desk preventing her from leaning her head over the counter. Williams further claims that MedExpress gave her permission to pick up her paperwork, but they would not give it to her, and they called the police because she said she would file a lawsuit.

We review a trial court's denial or grant of a weight claim for an abuse of discretion. *See Commonwealth v. Martin*, 323 A.3d 807, 823 (Pa.Super. 2024). When a trial court reviews a challenge to the weight of the evidence, it must determine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000)). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would

have arrived at a different conclusion." *Id.* (quoting *Widmer*, 744 A.2d at 752). The trier of fact is "free to believe all, part, or none of the evidence and to determine the credibility of witnesses." *Commonwealth v. James*, 268 A.3d 461, 468 (Pa.Super. 2021) (quoting *Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011)).

The trial court concluded that it "heard testimony from each witness presented by the Commonwealth and [Williams], along with any alleged inconsistencies, falsities, and biases in the testimony of those witnesses." Trial Ct. Op., filed Jan. 29, 2025, at 12. It noted that each witness was subject to cross-examination. *Id.* It found that it was "free to believe all, part, or none of the testimony," resolve any inconsistences, falsities, or biases, and judge the witnesses' credibility. *Id.* It found the Commonwealth's witnesses credible and concluded the challenge to the weight of the evidence should be dismissed. *Id.* This was not an abuse of discretion.

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Feliciano*, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of

fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (citation omitted).

A person is guilty of defiant trespass if "knowing that [s]he is not licensed or privileged to do so, [s]he enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor." 18 Pa.C.S.A. § 3503(b)(1)(i). Therefore, the Commonwealth must establish that the defendant "entered or remained upon property without a right to do so; 2) while knowing that [s]he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass." *Commonwealth v. Wanner*, 158 A.3d 714, 718 (Pa.Super. 2017) (citation omitted, emphasis removed).

Here, the trial court found the Commonwealth presented sufficient evidence to support the trespass conviction. It explained that Kraynak testified that Williams had been informed that MedExpress could not provide her medical care and that she was prohibited from presenting at MedExpress locations. Trial Ct. Op. at 8. The court pointed out Kraynak presented Williams with a letter informing her of the prohibition, and that a doctor from MedExpress informed Williams she had permission to enter for the purpose of picking up test results, but not for the purpose of seeking medical care. *Id.* at 9. The court further found that the record established that Willliams knew that she was permitted at the MedExpress location for the limited purpose of picking up test results, but nonetheless insisted that she be seen for medical

treatment. *Id.* It found that Williams "ignored the repeated requests to leave and remained on the premises for an extended period of time." *Id.* It found that the testimony of Kraynak and Wass, witnesses the court found credible, established that Williams was told to leave a minimum ten times, but remained for 15 to 20 minutes. *Id.*

We agree with the trial court that the evidence supports the trespass conviction. The testimony establishes that Williams was informed she could no longer seek medical care at MedExpress locations, that she had permission to enter for the sole purpose of retrieving paperwork, that she sought medical care when she came to MedExpress in May 2023, and that she refused to leave when repeatedly asked to do so. Her challenge to the sufficiency of the evidence fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/07/2025

- 11 -