J-A24028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY STEVEN STEHLEY | : | |
| | : | |
| Appellant | : | No. 1558 WDA 2018 |

Appeal from the Judgment of Sentence Entered September 14, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000418-2016

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED JANUARY 22, 2021**

Troy Stehley appeals from the judgment of sentence[1] imposed on September 14, 2018, following his conviction for Persons Not to Possess Firearm and Firearms Not to Be Carried Without a License.[2] He challenges the sufficiency of the evidence, claims that evidence was improperly admitted, and argues that his sentence was based on impermissible evidence. We affirm.

On March 29, 2015, Stehley engaged in a high-speed chase, driving his minivan through Altoona and Logan Township at extremely high speeds with several police officers pursuing him. The chase ended when the minivan crashed in a very serious, single-vehicle accident. Patrolman Matthew

---

[1] Stehley purports to appeal from the denial of his post-sentence motion. However, an appeal properly lies from the September 14, 2018 judgment of sentence, made final by the denial of his post-sentence motion. ***See Commonwealth v. Kuykendall***, 2 A.3d 559, 560 n.1 (Pa.Super. 2010).

[2] ***See*** 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a), respectively.

Angermeier arrived at the accident scene seconds after the crash occurred and observed the engine block on fire and a large debris field around the minivan. Patrolman Angermeier found Stehley, the driver and only occupant of the minivan, lying face down, unconscious and unresponsive, approximately five feet from the vehicle. Police also found a Hi-Point 9mm handgun in the debris field within feet of where Stehley had been lying. **See** Trial Court Opinion, 01/04/19, at 8-11.

Stehley was charged with 39 counts related to the chase. The court severed the two firearms counts involved in this appeal from the remaining charges. On July 7, 2018, a jury convicted Stehley of both firearm charges. On September 14, 2018, the court imposed a sentence of five to 10 years for Persons Not to Possess Firearm and a consecutive sentence of three and one half to seven years for Firearms Not to Be Carried Without a License. **See id.** at 2. The court denied Stehley's post-sentence motions, and this timely appeal followed.

Stehley raises three issues on appeal:

I. Did the Commonwealth present sufficient evidence to convict [Stehley]?

II. Did the trial court err in permitting the testimony of Commonwealth witness Daniel D'Andrea in that his name was not provided in a witness list and was only offered to implicate [Stehley] in a crime with which he was not charged?

III. Did the trial court abuse its discretion in imposing a sentence which was unduly harsh given the circumstances?

Stehley's Br. at 5 (questions re-ordered for ease of disposition).

Stehley's first issue relates to the sufficiency of the evidence underlying his conviction. A sufficiency challenge requires us to consider all evidence admitted at trial, drawing all reasonable inferences in favor of the Commonwealth as verdict-winner, and ask whether the evidence, so viewed, was capable of proving all elements of the crimes charged beyond a reasonable doubt. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Feliciano*, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). The Commonwealth may carry its burden with wholly circumstantial evidence and any doubt about the defendant's guilt is for the fact finder "unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* (citation omitted).

Stehley claims that the Commonwealth failed to prove that he was in possession of the Hi-Point 9mm handgun that police found at the scene. He argues that the evidence did not establish constructive possession of the firearm because there was no evidence that he was the owner of either the firearm or the vehicle, and because the DNA evidence could have been transferred to the gun without him possessing the gun. We disagree.

As this Court has explained, because Stehley was not in physical possession of the firearm, the Commonwealth was required to establish that he had constructive possession of it.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Hopkins**, 67 A.3d at 820 (quoting **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super. 2012)).

When viewed in their totality, the evidence and reasonable inferences drawn therefrom support the finding that Stehley was in constructive possession of the firearm. After a high-speed crash, police found Stehley's unconscious body in a field of debris thrown from the crashed vehicle. Next to him was a Hi-Point 9mm handgun, as well as a white hat and shoe that Stehley had been wearing. **See** N.T. Trial, 6/06/18, at 39-40. A forensic DNA expert testified that DNA collected from the muzzle and inside the barrel of the firearm was a mixture of three individuals' DNA, one of which produced a DNA profile consistent with Stehley's. **See id.** at 152, 154. This was enough to prove constructive possession. Stehley's first issue is meritless.

In the second issue above, Stehley claims that the trial court erred when it concluded that Stehley "opened the door" to the Commonwealth's presenting the testimony of D'Andrea, despite the Commonwealth not having initially listed D'Andrea as a witness. Stehley also alleges that D'Andrea's testimony was unduly prejudicial. We disagree.

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (citations and quotation marks omitted).

All relevant evidence is admissible, unless some rule of law renders it inadmissible. *See* Pa.R.E. 402. One such rule is where the probative value of relevant evidence "is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Nonetheless, "[i]f [a] defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area." *Commonwealth v. Lewis*, 885 A.2d 51, 54-55 (Pa.Super. 2005) (quoting *Commonwealth v. Stakley*, 365 A.2d 1298, 1300 (Pa.Super. 1976)). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Nypaver*, 69 A.3d 708, 716-17 (Pa.Super. 2013) (citations omitted).

In the instant case, the following exchange took place during defense counsel's cross-examination of the police officer who pursued Stehley, Patrolman Angermeier:

Q. Now did you run the registration of this vehicle at some point?

A. Yes.

Q. And who was it registered to?

A. I do not recall.

Q. Was it registered to Mr. Stehley?

A. I don't recall who the registration came back to.

Q. When did you run the registration?

A. As soon as I got behind the vehicle I would have run the registration.

Q. So you don't recall who it was registered to?

N.T. Trial, 6/06/18, at 66-67.

The court then allowed the prosecutor and defense counsel to approach, and the prosecutor stated that defense counsel's cross-examination was getting into the area of specific bad acts, which, he noted, he would ask about in response, on re-direct. The court acknowledged that the cross-examination would open the door for testimony concerning the circumstances of Stehley obtaining the vehicle, but stated that it would reserve ruling on any objections until the Commonwealth brought forward its evidence. *See id.* at 68, 70. Defense counsel then continued his cross-examination by asking Patrolman Angermeier if he was familiar with three individuals, including Daniel D'Andrea. *See id.* at 70, 72.

At trial the next day, the prosecutor offered the testimony of Daniel D'Andrea in response to the defense counsel's cross-examination of Patrolman Angermeier. *See* N.T. Trial, 6/07/18, at 4. Defense counsel objected that he had received no previous discovery concerning D'Andrea. The prosecutor

explained that he intended to offer the testimony of D'Andrea, the owner of the body shop from where the minivan was taken, to rebut the inference that Stehley was either owner of the vehicle or had authorization to drive it. The prosecutor further explained that the discovery indicated that D'Andrea was the owner of the shop. The court allowed the Commonwealth to call D'Andrea as a witness.

D'Andrea then testified that he had the minivan at his body shop after making repairs for a customer, and he neither drove the vehicle nor had he authorized anyone else to do so. *See id.* at 9-11. Following D'Andrea's testimony, the court gave the following cautionary instruction:

> [T]he Defendant, Mr. Stehley, is not charged with theft of a motor vehicle nor with unauthorized use of a motor vehicle and you're not to draw any adverse inference or any inference that the Defendant is the individual who may have removed the vehicle from Mr. D'Andrea's parking lot or from his lot.

*Id.* at 13.

We find no abuse of discretion. We agree with the trial court that by cross-examining Patrolman Angermeier about the registration of the minivan, and specifically asking him about D'Andrea, defense counsel "opened the door" to D'Andrea's testimony. Moreover, the limiting instruction was sufficient to counteract any prejudice. Accordingly, Stehley's second claim is meritless.

Finally, in the third claim above, Stehley claims that the sentence imposed by the court was unduly harsh. Such a challenge goes to the discretionary aspects of a sentence, and is not appealable as of right.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa.Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), (internal citations omitted).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010) (some citation formatting provided).

Here, Stehley preserved his issue in a timely post-sentence motion for modification of sentence, and then filed a timely notice of appeal. His appellate brief includes a statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). ***See*** Stehley's Br. at 9-10. Therefore, we must determine whether he has raised a substantial question justifying our review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Moury***, 992 A.2d at 170 (citations and quotation marks omitted).

Stehley's Rule 2119(f) statement contends that the sentencing court abused its discretion when it based the sentence on "evidence which the

- 8 -

Commonwealth inappropriately attempted to present." **See** Stehley's Br. at 9.

"[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." **Commonwealth v. Crork**, 966 A.2d 585, 590 (Pa.Super. 2009) (citation omitted).

Therefore, we conclude that Stehley has raised a substantial question. Accordingly, we turn to our standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Lekka**, 210 A.3d 343, 350 (Pa.Super. 2019) (citation omitted).

> "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa.Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." **Id.** Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. **See Commonwealth v. Cruz-Centeno**, 668 A.2d 536 (Pa.Super. 1995) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

*Moury*, 992 A.2d at 171 (some citation formatting provided, some citations omitted).

Stehley argues that the sentencing court considered evidence introduced by the Commonwealth at sentencing concerning a "hit list" which he had developed in prison. Stehley contends that while the court stated that it did not consider the evidence, "the mere fact that same was permitted to be presented denied [Stehley] of his due process rights to have his sentencing based upon reliable information which he had a right to review." Stehley's Br. at 13.

At sentencing, the Commonwealth made reference to alleged threats that Stehley had made, and the court overruled Stehley's objection to the reference:

> [THE PROSECUTOR]: . . . I would also submit to this [c]ourt that he is a danger to law enforcement. The Commonwealth was in receipt of threats that defendant Stehley made towards particular Police Officers that were involved in this case including Patrolman Matthew Angermeier and Patrolman Serek Swope of the Altoona Police Department, specifically, the Commonwealth became in receipt of a hit list.
>
> [DEFENSE COUNSEL]: Your Honor, I am going to object to this. It was provided to me this morning. It is an unsigned handwritten document. I don't know when it was written, by whom it was written, and how it is relevant to this case and this proceeding.
>
> * * *
>
> [THE COURT]: . . . For purposes of the record, I am going to overrule the objection. . . . Ultimately it will go to weight but I will overrule the objection.

N.T. Sentencing, 9/14/18, at 11.

- 10 -

The court later set forth its reasons for its sentence, none of which mentioned the so-called "hit list":

> We have considered all relevant factors for sentencing, including, but not limited to, the protection of the community, the gravity of the offenses in relation to the impact on the victims in the community and the rehabilitative needs of the defendant. We have also considered the underlying factual circumstances developed during the jury trial wherein the defendant led the police on a high-speed chase putting the police, himself, pedestrians and property at risk. We have considered the information set forth in the pre-sentence investigation report, the sentencing guidelines and the presentations this date on behalf of the Commonwealth and the defendant. According to the PSI the defendant is now 38 years of age. He has a juvenile record dating back to 1993 and an adult record dating back to 1998. The defendant has prior convictions for a myriad of offenses including burglary, retail theft, 13 convictions, criminal and defiant trespass, resisting arrest, two convictions, simple assault, terroristic threats, fleeing or attempting to elude officer, three prior convictions for recklessly endangering another person, theft by unlawful taking, and numerous vehicle and numerous summary criminal offenses. The defendant has a total of 29 adult arrests and 27 convictions. At least one prior probation has been revoked and he has been revoked from parole on 6 occasions. Anytime that he has been released to the community, he is engaged in new criminal behavior. The defendant has never invested in recommended treatment or services. We specifically find that despite his numerous prior convictions and parole and probations the defendant has never demonstrated any commitment to recommended treatment nor any desire to change his long-standing criminal behavior. He poses a direct safety risk to our community and we believe a significant period of incarceration is justified and warranted.

*Id.* at 21-22.

Prior to imposing its sentence, the trial court explicitly stated on the record that it had given no weight to the mention of the "hit list":

> [O]ur sentencing [] is in no way affected at all by the misconducts within the prison system to which Mr. Stehley takes issue as well

as the hit list that was referenced today. We are not putting any weights on those particular issues so we want to take care of those potential issues for any possible appellate review that they play no part in the sentence that we are about to impose.

*Id.* at 22.

The trial court then imposed standard-range sentences for both convictions. The court imposed the sentences consecutively.

Upon review, we conclude that the trial court did not abuse its discretion. The court had the benefit of a presentence investigation report, which it reviewed and considered. It expressly noted that it did not consider any referenced prison misconducts or the "hit list," nor did they weigh on the sentence in any respect. The sentence imposed was within the standard guidelines and statutory maximum and the court had the discretion to impose the sentences consecutively. Stehley's final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2021