J-S06023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REYNALDO FLORES | : | |
| | : | |
| Appellant | : | No. 1364 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 24, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000723-2020

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: APRIL 13, 2023**

Appellant Reynaldo Flores appeals *nunc pro tunc* from the judgment of sentence entered after a jury found him guilty of possession of controlled substance by an inmate (possession by an inmate), possession of controlled substance (simple possession), and possession of drug paraphernalia (drug paraphernalia).[1] Appellant challenges the trial court's admission of the crime lab's test results at trial and the sufficiency of the evidence. Appellant also argues that the trial court erred by sentencing Appellant *in absentia*. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5123(a.2), 35 P.S. § 780-113(a)(16), and (32), respectively.

The trial court summarized the factual and procedural history of this matter as follows:

> At trial, the Commonwealth presented evidence that [Appellant] had possession of a contraband BIC lighter, Suboxone and drug paraphernalia which was located during a strip and cell search while [Appellant] was housed as an inmate at SCI Mahanoy. Correctional Officer Roberto Sosa ("Sosa") testified that on July 29, 2019 [Appellant] was housed in the restrictive housing unit ("RHU") at SCI Mahanoy and was subjected to a strip search based on information that [Appellant] was in possession of contraband. The search was videotaped. The search occurred in the Level 5 strip room. [Appellant] was instructed to take off one article of clothing at a time. When [Appellant] took off his pants, an object fell onto the floor and it was determined that [Appellant] had a BIC mini lighter which was restricted and considered contraband for any inmate housed in the RHU. Sosa placed [Appellant's] pants, which contained one back pocket, on a chair. Another officer was present and searched [Appellant's] pants pocket, which contained a black fingertip balloon. [Appellant] denied that the balloon was his. Sosa testified that the correctional officers routinely use black rubber gloves while working with the inmates, which are then disposed of, and the inmates take the gloves out of the garbage and either sell or redistribute them to other inmates.
>
> Lieutenant Steven Taylor ("Taylor") testified that he was involved in the strip search of [Appellant] on July 29, 2019. Taylor searched [Appellant's] shirt and then his pants, in which Taylor found a fingertip to a black glove that was formed into a ball shape in the back pocket. Taylor contacted the security lieutenant and together they opened the black fingertip which contained orange strips later confirmed to be Suboxone.
>
> Corrections Officer Bruce Mason ("Mason") testified that on July 29, 2019 he was directed to go to [Appellant's] cell and remove [Appellant's cellmate] and search the cell. Mason searched the cell along with another officer with [Appellant] present outside the cell. Mason found a small piece of cellophane containing seven small pieces of an orange color in the back of the cell in a small metal desk attached to the wall. [Appellant] admitted that the suspected drugs were his.

- 2 -

Lieutenant Jodi Cobian ("Cobian") testified that she was involved in an investigation on July 29, 2019 concerning [Appellant]. She was approached by Taylor who had information that [Appellant] had brought contraband into the RHU and wanted to be housed in a cell with a certain [cellmate]. While [Appellant's] cell was searched, she spoke to [Appellant's] cellmate. After searching the cell, Mason brought her a Styrofoam ball which contained little orange pieces individually wrapped in Styrofoam. Testing later confirmed it to be Suboxone. After strip searching [Appellant], Taylor brought her a small blue BIC lighter and a tip of [a] black glove which contained Suboxone strips. The evidence was photographed and placed into an evidence bag which was placed into an evidence locker, which is locked and kept within a locked office. The evidence bag contains identification information on the outside including the name of the prison, case number, the suspected inmate's name and number; date and time of recovery, who recovered it, and a description of the items, as well as a chain of custody. Cobian admitted that Suboxone is permitted in the prison if the inmate has a prescription, but that it is a pill which is administered in the medical unit, not a strip. She notified Pennsylvania State Police of the incident the next day via email.

Trooper Andrew Letcavage ("Letcavage") testified that he is a Pennsylvania State Police ("PSP") officer and the affiant in this case. When PSP receives an extraordinary incident report ("EOR") from the prison, they pick up the evidence from the prison, photograph it; package it, place it in a secure room and then it is signed out and transported to a laboratory. Letcavage did not become a member of the criminal investigation unit until February 21, 2020, so a different officer was initially working the case until Letcavage filed the charges against [Appellant], which resulted in a five[-]month delay. There was a further two[-]month delay in time between the incident and when the PSP officer picked up the evidence at the prison. Letcavage was not the officer who transported the evidence to the Bethlehem Regional Police Crime Laboratory ("[crime l]ab"), which did the testing.

Brendan McCann ("McCann") is a forensic scientist with the [crime l]ab, specializing in drug identification. He was admitted as an expert witness in the field of drug identification without objection. McCann was assigned to test the mixture of cellophane wrappings and orange films and fragments contained in the evidence envelope concerning this investigation. He conducted two tests, a presumptive and a confirmatory, identified the substances as buprenorphine, common name Suboxone, a Schedule 3 controlled

substance. The total net weight was 2.13 grams. He repackaged the evidence in bags within a secured envelope and wrote a report dated October 18, 2019. His report indicated that the package had been transported to the [crime l]ab by Trooper Daniel R. Phillips ("Phillips"). McCann testified that the [crime l]ab received the evidence [on] September [16,] 2019, and that it was normal for the actual testing to take about one month to occur after receipt of the evidence.

After the Commonwealth rested, the Commonwealth moved for the admission of all of its exhibits, including Commonwealth Exhibit 2, the property records, and Exhibit 5, the lab report, to which Defendant objected. Both objections were based on the lack of chain of custody testimony by Phillips. The objections were overruled.

* * *

[Appellant testified] that on July 29, 2019, he was first strip searched in his cell which was videotaped but the video was missing and had not been produced by the Commonwealth regarding that preliminary search. Then he walked through a body scanner and was then taken to the strip room. [Appellant] admitted that he had a lighter which fell out of his back pants pocket, but denied that he had a black balloon in his pants, and also denied that the drugs in his cell were his and that he never said that [they] were his. On cross examination, [Appellant] was at first unable to explain how the lighter was not discovered during the first strip search in his cell. Then he testified that they "felt it" during the strip search but allowed him to keep it in his pocket.

[On April 6, 2021, t]he jury found [Appellant] guilty of all three charges.

Trial Ct. Op., 8/31/21, at 2-6.

The Honorable Cyrus P. Dolbin deferred sentencing to May 24, 2021 for the preparation of a pre-sentence investigation (PSI) report. N.T. Trial, 4/6/21, at 153-54; Order, 4/6/21. On May 24, 2021, Appellant failed to appear for the sentencing hearing. The Commonwealth presented testimony from Schuylkill County Adult Probation Officer Sara Dudley. Officer Dudley

testified that while preparing Appellant's PSI report, she attempted to contact Appellant, and she discovered that Appellant was currently incarcerated in Osceola County, Florida. N.T. Sentencing Hr'g, 5/24/21, at 3-4. Officer Dudley further explained that Appellant had been detained on a bench warrant for absconding from supervision while he was on probation for an unrelated case in Berks County. *Id.* at 4. She also testified that there were no pending extradition proceedings involving Appellant at that time. *Id.* Appellant's trial counsel objected to the trial court proceeding with sentencing Appellant *in absentia*. *Id.* The trial court overruled the objection and imposed an aggregate sentence of two to four years' imprisonment consecutive to any other sentence Appellant was currently serving. Appellant did not file any post-sentence motions.

Appellant filed a timely notice of appeal *nunc pro tunc*[2] and a timely court-ordered Pa.R.A.P. 1925(b) statement. The Honorable Christopher Hobbs issued a Rule 1925(a) opinion adopting the August 31, 2021 opinion written by the now-retired Judge Dolbin. *See* Trial Ct. Op, 10/27/22, at 1-2.

_____

[2] Appellant previously filed a notice of appeal on June 29, 2021. This Court quashed that appeal as untimely on April 5, 2022. *Commonwealth v. Flores*, 881 MDA 2021, 2022 WL 1016659 (Pa. Super. filed April 5, 2022) (unpublished mem.). Appellant then filed a timely *pro se* PCRA petition on May 5, 2022, and the PCRA court appointed PCRA counsel to represent Appellant. Thereafter, PCRA counsel filed an amended PCRA petition on June 23, 2022. On September 15, 2022, the PCRA court granted Appellant's petition and reinstated Appellant's appellate rights *nunc pro tunc*.

Appellant raises the following issues for our review, which we reorder as follows:

1. Did the trial court err in [admitting] the lab results into evidence?

2. Did the Commonwealth fail to sufficiently establish the elements of the crime beyond a reasonable doubt?

3. Did the [trial] court err in sentencing [Appellant] *in absentia*?

Appellant's Brief at 5 (some formatting altered).

## Admissibility of Lab Results

In his first issue, Appellant argues that the trial court erred in admitting evidence of the crime lab's test results because there was a gap in the chain of custody for the drugs. *Id.* at 11-13. In support, Appellant notes that the Commonwealth did not present testimony from Trooper Phillips, who transported the drugs to the crime lab from the State Police barracks. *Id.* at 12. Appellant claims that Trooper Phillips' testimony was necessary to establish that there was no break in the chain of custody between when the drugs were collected on July 29, 2019, and when they were delivered to the crime lab on September 16, 2019. *Id.* Therefore, Appellant contends that because there was a gap in the chain of custody for the drugs, the crime lab's test results were inadmissible.

In reviewing Appellant's claim, our standard of review is as follows:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or

- 6 -

misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted).

This Court has explained:

There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remain unimpaired until they were surrendered to the court. . . .

Moreover, [t]here is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. Physical evidence may be properly admitted despite gaps in testimony regarding custody. Pointedly, this Court has upheld the chain of custody based on less testimony. Lastly, [the defendant] incorrectly argues this issue as though it were related to the admissibility of the evidence. Gaps in the chain of custody, the underlying issue of [the defendant's] argument, go to the weight of the evidence and not its admissibility.

*Commonwealth v. Feliciano*, 67 A.3d 19, 29 (Pa. Super. 2013) (*en banc*) (citations and quotation marks omitted); *see also Commonwealth v. Witmayer*, 144 A.3d 939, 950 (Pa. Super. 2016) (the same); Pa.R.E. 901(a) (stating that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").

In **Feliciano**, the defendant argued "that the trial court erred in admitting into evidence two envelopes that contained the packets of cocaine purchased from [the defendant] because there were gaps in the chain of custody." **Feliciano**, 67 A.3d at 28. On appeal, the **Feliciano** Court concluded that although the Commonwealth did not present any evidence as to how the envelopes were delivered to the crime lab, the "chain of custody was more than sufficient[]" because there was testimony from the officer who placed the drugs into the sealed envelopes and the forensic scientist who opened the envelopes and tested their contents. **Id.** at 28-29.

Here, at trial, Appellant objected to the admission of lab report because of there was a gap of in the chain of custody for the drugs. **See** N.T. Trial at 104-05.

In addressing Appellant's claim on appeal, the trial court explained:

The law is clear that physical evidence may be properly admitted despite gaps in testimony regarding its custody. Gaps in the chain of custody go to the weight to be given to the testimony, not to its admissibility. There was no evidence supporting an argument that the envelopes containing the alleged drugs had been tampered with; the drugs, lighter and glove tip were identified by several corrections officers as having been the same drugs they found on [Appellant's] person and in his cell.

. . . . Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a reasonable inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court. . . .

[**Commonwealth**] **v. Hudson**, 414 A.2d 1381, 1387 ([Pa.] 1980). We believe that the exhibits were properly admitted.

Trial Ct. Op., 8/31/21, at 6-7 (some citations omitted and some formatting altered).

Initially, we note that although Appellant claims that the evidence was inadmissible due to a gap in the chain of custody, that issue goes to the weight of the evidence, rather than its admissibility. **See Feliciano**, 67 A.3d at 28-29; **Witmayer**, 144 A.3d at 950. Accordingly, as more fully discussed below; to the extent that Appellant asserts a weight claim challenging the chain of custody for the drugs, he has waived this issue by failing to raise it before the trial court and no relief is due. **See** Pa.R.Crim.P. 607(A); **see also** Pa.R.A.P. 302(a).

In any event, on this record, we discern no abuse of discretion by the trial court in admitting the evidence. **See LeClair**, 236 A.3d at 78. Here, the Commonwealth presented sufficient evidence establishing the chain of custody for the drugs and their authenticity. **See Hudson**, 414 A.2d at 1387; **Feliciano**, 67 A.3d at 28-29; **see also** Pa.R.E. 901(a). As noted previously, the record reflects that Lieutenant Taylor, Officer Sosa, and Officer Mason recovered the orange strips from Appellant's person and from his cell on July 29, 2019. **See** N.T. Trial at 60-62, 73-76, 81-83. Lieutenant Taylor and Officer Mason then gave the orange strips to Lieutenant Cobian, who placed them in an evidence bag, sealed and dated the bag, and secured the bag in an evidence locker. **See id.** at 88-90. Trooper Letcavage testified that the staff at SCI Mahanoy gave the evidence bag to a PSP trooper, who placed it in a PSP envelope, and then deposited the evidence inside a locked evidence

room at the PSP Frackville Barracks. *See id.* at 24-30. In his lab report, McCann indicated that PSP Trooper Phillips submitted the evidence to the crime lab on September 16, 2019. *See id.* at 56. McCann testified that the sealed evidence envelope contained "crumpled orange films" which he tested and then resealed in the evidence envelope. *See id.* at 50. Under these circumstances, Appellant is not entitled to relief on this claim. *See Feliciano*, 67 A.3d at 29 (explaining that an exhibit is admissible where there is sufficient evidence to "establish a reasonable inference that the identity and condition of the exhibits remain unimpaired until they" were brought to court (citation omitted)).

## Sufficiency of the Evidence

In his second claim, Appellant challenges the sufficiency of the evidence supporting his convictions for possession by an inmate, simple possession, and drug paraphernalia.[3] Appellant's Brief at 14-16. Specifically, Appellant claims that there was no admissible evidence establishing that the items he

---

[3] It is well settled that a vague challenge to the sufficiency of the evidence may result in waiver. *See Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017). This is particularly important where the defendant was convicted of multiple crimes, which each contain multiple elements that the Commonwealth must prove beyond a reasonable doubt. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). Here, Appellant raised the following sufficiency claim: "[t]he Commonwealth failed to prove Counts 1, 2[,] and 3 because of the break in the chain of evidence." Rule 1925(b) Statement, 10/21/22. The trial court addressed Appellant's sufficiency claim in its Rule 1925(a) opinion, and the case against Appellant was relatively straightforward. Therefore, we decline to find waiver. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (*per curiam*).

possessed were a controlled substance. In support, Appellant reiterates his claim that the crime lab's test results were inadmissible because of a gap in the chain of custody for the drugs. *Id.* at 15. Appellant concludes that "[w]ithout the [crime] lab results, the Commonwealth could not sufficiently prove any of the counts against [Appellant] beyond a reasonable doubt." *Id.* at 15-16 (citing, *inter alia*, **Witmayer**, 144 A.3d at 950).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part[,] or none of the evidence.

> Furthermore, in evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct.

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citations omitted and formatting altered)).

Here, as noted previously, Appellant's sufficiency claim is based on his assertion that the crime lab's test results are inadmissible. However, in reviewing a sufficiency claim, we must consider all of the evidence presented at trial, "without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *See id.* (citation omitted). Therefore, Appellant is not entitled to relief on his claim that if this Court excludes certain evidence from our review, the remaining evidence is insufficient to sustain Appellant's convictions.[4,5] *See id.*

### Sentencing *In Absentia*

Lastly, Appellant argues that the trial court erred by sentencing him *in absentia*. Appellant's Brief at 13-14. Appellant contends that the trial court violated his constitutional right to be present during his sentencing hearing.

---

[4] In any event, we agree with the trial court that there was sufficient evidence to establish that Appellant possessed Suboxone, a Schedule 3 controlled substance, and drug paraphernalia. *See* N.T. Trial at 50-57, 60-62, 73-76, 81-83. Therefore, Appellant's sufficiency claim is meritless.

[5] As previously stated, gaps in the chain of custody go to the weight of the evidence. *See Feliciano*, 67 A.3d at 29; *Witmayer*, 144 A.3d at 950. Challenges to the weight of the evidence must be preserved either orally prior to sentencing, in a written motion before sentencing, or in a written post-sentence motion. *See* Pa.R.Crim.P. 607(A). Therefore, to the extent that Appellant is raising a weight claim based on a gap in the chain of custody for the drugs, he has waived the issue by failing to raise it before the trial court. *See id.*; *see also* Pa.R.A.P. 302(a).

*Id.* at 13. Appellant notes that he was not able to attend the May 24, 2021 sentencing hearing because he was incarcerated in Florida and that the Commonwealth and trial court were aware of his location. *Id.* at 14. Appellant argues that he was not able to attend his sentencing because of his incarceration on a bench warrant, and that he did not knowingly and intelligently waive his right to be present during sentencing. *Id.* Therefore, Appellant concludes that the trial court violated his constitutional right to be present during sentencing.

We review a trial court's decision to hold a trial or sentencing hearing *in absentia* for an abuse of discretion. *See, e.g.*, *Commonwealth v. Wilson*, 712 A.2d 735, 739 (Pa. 1998) (stating that "[t]he decision to conduct the hearing in the defendant's absence nevertheless remains within the discretion of the trial judge"); *Commonwealth v. Hilburn*, 746 A.2d 1146, 1149 (Pa. Super. 2000) (stating that "[t]his Court uses the same analysis for absence at the sentencing phase as it does for absence at trial" (citation omitted)).

In *Wilson*, our Supreme Court explained:

A person accused of a crime has a constitutional right pursuant to the Sixth Amendment of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution to be present at every stage of a criminal trial. In non-capital cases, a defendant may, by his actions, waive this right expressly or implicitly. The waiver must be knowing and voluntary. When a defendant is initially present at the time the trial commences, then flees or fails to attend further proceedings, he or she is deemed to have knowingly and voluntarily waived his or her right to be present. Courts in this Commonwealth have consistently held that a trial court may, in its discretion, conduct a trial *in absentia* when the defendant absconds without cause after the trial commences.

*Wilson*, 712 A.2d at 737; *see also Hilburn*, 746 A.2d at 1149 (holding that the trial court did not abuse its discretion by trying the defendant *in absentia* where she failed to appear for trial even though the trial court informed her after jury selection that the trial would begin the following morning).

Rule 602 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part, as follows:

> The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. **The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including . . . the imposition of sentence.**

Pa.R.Crim.P. 602(a) (emphasis added); *see also* Pa.R.Crim.P. 602, cmt (explaining that "[a] defendant's presence may be deemed waived by the defendant intentionally failing to appear at any stage of the trial after proper notice").

"Where the Commonwealth has demonstrated by a preponderance of the evidence that the defendant is absent 'without cause' and that he knowingly and intelligently waived his right to be present, he may be tried *in absentia*." *Commonwealth v. Hill*, 737 A.2d 255, 259 (Pa. Super. 1999) (citations omitted); *see also* Pa.R.Crim.P. 602, cmt (the same).

Here, the trial court explained:

> At the sentencing hearing on May 24, 2021, the court was informed that [Appellant] was currently in Florida. Counsel for the [Appellant] appeared. Sara Dudley, a Schuylkill County Adult Probation Officer, testified that she knows [Appellant], that she

attempted to contact [Appellant] to get information from him for his [PSI], that she was unable to do so because [Appellant] was currently in custody in Osceola County, Florida and that Florida was not going to extradite him. She testified that after the trial in the within matter, [Appellant] absconded and Berks County, where [Appellant] was serving probation, issued a bench warrant and [Appellant] was picked up in Florida. [Appellant's] counsel objected to having [Appellant] be sentenced *in absentia*; counsel had spoken to [Appellant] that day and [Appellant] was incarcerated in Florida and was unable to be present to testify.

We initially note that our court has the capability to conduct hearings using video conferencing, and no efforts were made by [Appellant] or his counsel to request a continuance of the sentencing so that [Appellant] could participate, either prior to or on the day of his sentencing. There was simply an objection lodged to his being sentenced *in absentia*.

A defendant has the right after indictment to be present for all of his criminal proceedings. However, such a right can be relinquished, by waiver or by one's actions. . . .

Here, the date of sentencing was given verbally by this court to [Appellant] after the jury's verdict was rendered on April 6, 2021. A PSI was also verbally ordered on April 6; 2021, giving [Appellant] the opportunity to participate in the preparation of the PSI and giving [Appellant] two months to prepare for his sentencing date on May 24, 2021 at 2:00 PM. [Appellant] voluntarily left Pennsylvania and absconded to Florida while under Berks County supervision, and while knowing that he was to be sentenced in Schuylkill County on May 24, 2021. The Berks County Court of Common Pleas issued a bench warrant and [Appellant] was arrested and detained in Florida as a result.

[Appellant's] counsel was present for the sentencing and presented no argument as to the sentencing itself or as to why [Appellant] had absconded to Florida, and whether he did so voluntarily or otherwise. The only argument presented was the fact that [Appellant] wished to be heard and was unable to be physically present to testify because he was incarcerated in Florida. This court is unaware of any effort made by [Appellant] or his counsel to ask for a continuance or to make arrangements to have [Appellant] appear via video conference. The court considered the PSI prior to sentencing [Appellant]. [Appellant] had a chance to participate in the preparation of the PSI, but failed

- 15 -

to do so, and was unable to be reached by the Adult Probation officer. We believe that we properly sentenced [Appellant], albeit in his absence.

Trial Ct. Op., 8/31/21, at 7-9 (citations omitted and some formatting altered).

Following our review of the record, we discern no abuse of discretion in the trial court's decision to sentence Appellant *in absentia*. ***See Wilson***, 712 A.2d at 739. The record reflects that Appellant was present for his trial, and that the trial court informed him that the sentencing hearing was scheduled for May 24, 2021. ***See*** N.T. Trial at 153-54. At sentencing, the Commonwealth presented evidence that Appellant had subsequently left Pennsylvania and that he was apprehended in Florida prior to the scheduled sentencing hearing. ***See*** N.T. Sentencing Hr'g at 3-4. Therefore, the Commonwealth proved by a preponderance of the evidence that Appellant was absent without cause and that he knowingly and voluntarily waived his right to be present for sentencing by absconding from supervision. ***See Wilson***, 712 A.2d at 7379; ***Hilburn***, 746 A.2d at 1149; ***Hill***, 737 A.2d at 259. Therefore, Appellant is not entitled to relief on this claim.[6] For these reasons, we affirm.

_____

[6] To the extent the trial court suggests that it properly sentenced Appellant *in absentia* because Appellant's counsel failed to request a continuance or accommodations to allow Appellant to remotely participate in the sentencing hearing, we note that this is erroneous. ***See*** Trial Ct. Op., 8/31/21, at 8/31/21, at 7-9. As stated above, the Commonwealth bears the burden to establish that proceeding in the defendant's absence is appropriate. ***See Hill***, 737 A.2d at 259. However, this Court "may affirm a decision of the trial court if there is any basis on the record to support the trial court's actions, even if

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2023

---

we rely on a different basis." ***Commonwealth v. Moser***, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) (citation omitted). Therefore, we affirm for the reasons stated above.

- 17 -