J-S45039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LYNN MANUEL ACEVEDO | : | |
| | : | |
| Appellant | : | No. 1671 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 8, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0000583-2023

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 14, 2025**

Lynn Manuel Acevedo appeals from the judgment of sentence imposed following his conviction for possession of a firearm prohibited.[1] He challenges the sufficiency of the evidence to support his conviction. We affirm.

The trial court accurately summarized the facts as follows:

> Agent Nicholas Turse (hereinafter referred to as "Agent Turse") with the Pennsylvania Parole Board testified on behalf of the Commonwealth. N.T.[,] 9/18/23[,] at 36-48. Agent Turse testified that he was [Acevedo's] supervising parole agent on January 19, 2023 and for approximately 6 months prior. *Id.* at 37. Agent Turse contacted [Acevedo] on the afternoon of January 18, 2023 to notify [Acevedo] that he and other parole agents would be at [Acevedo's] home the following morning, January 19, 2023, to meet with [Acevedo] to conduct a search of [Acevedo's] home. *Id.* at 38-42. [Acevedo] attempted to change the date of the home visit and told Agent Turse that he would not be available the morning of January 19, 2023 due to his "wife" having a

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

dental appointment in Allentown. *Id.* at 38-39. Agent Turse refused [Acevedo's] request to change the date of the home visit. *Id.* at 39. Agent Turse arrived at [Acevedo's] home shortly before 8:00 a.m. on January 19, 2023 with additional state agents, including a K9 agent. *Id.* at 39.

When Agent Turse arrived at [Acevedo's] home, [Acevedo] and his fiancé, Yolanda Medina (hereinafter referred to as "Medina"), were in their vehicle, with the engine and lights on, appearing to get ready to leave the residence. *Id.* at 39-40. Agent Turse testified that everyone exited their vehicles simultaneously, that they briefly spoke outside, and that they then went inside [Acevedo's] home. *Id.* at 39. During the entirety of the search of [Acevedo's] home, Agent Turse remained with [Acevedo] while other agents searched the home. *Id.* at 41. Agent Turse testified that [Acevedo] was "obviously distressed" during the search of his home and asked Agent Turse multiple times what was going to happen. *Id.*

Agent Scott Beilman (hereinafter referred to as "Agent Beilman") with the Pennsylvania Parole Board also testified on behalf of the Commonwealth. *Id.* at 48-69. Agent Beilman testified that he assisted with the search of [Acevedo's] home on January 19, 2023. *Id.* at 49-50. While Agent Turse and other agents remained with [Acevedo], Agent Beilman and other agents moved through the home to make sure it was safe and that there were no other individuals present. *Id.* at 51. While the agents were moving through the home, they came to a door that was locked. *Id.* at 51-52. Agent Beilman inquired with [Acevedo] and Medina about keys to the locked room. *Id.* at 52. Medina advised Agent Beilman that the locked room was her and [Acevedo's] bedroom. *Id.*

Agent Beilman testified that Medina indicated that the key to the bedroom was in her bag, which was outside in the car. *Id.* at 52. Agent Beilman further testified that he accompanied Medina outside to the car, retrieved the key, and returned to the locked bedroom door. *Id.* at 53. Agent Beilman had earlier inquired about any weapons inside the home; however, Medina didn't advise him that there was a firearm inside the locked bedroom located under the mattress until "very shortly" before entering the bedroom.

*Id.* at 6[8]. Medina advised Agent Beilman that she forgot about the firearm in the locked bedroom. *Id.* at 61, 67.

Agent Beilman described the bedroom as "average sized." *Id.* at 53-54. He testified that after entering the bedroom, Agent Turse and another agent searched the bedroom for additional individuals and for safety concerns. *Id.* at 53, 60. Once cleared of any safety concerns, the K9 agent entered the bedroom. *Id.* The K9 alerted on a nightstand that was located on the left side of the bed, so Agent Beilman searched the nightstand. *Id.* at 54. Within the nightstand on the left side of the bed were female undergarments and prescription pill bottles that belonged to Medina. *Id.* Additionally, hanging on the left side of the bed's headboard were several bags and purses that had receipts belonging to Medina inside them. *Id.* The only thing on the right side of the bed was a closet that contained men's clothing and shoes. *Id.*

Agent Beilman testified that he then lifted the mattress on the bed. *Id.* at 55. Underneath the mattress, on the far right hand side of the bed, was a firearm with a fully loaded magazine. *Id.* at 55-59. The firearm was located near the pillow area of the bed and about 2 inches in from the outside right hand edge of the bed. *Id.* at 55. The firearm that was found was identified as a 9 mm pistol. *Id.* at 57 . . .

The defense presented the testimony of [Medina]. *Id.* at 79-118. Medina testified that she is [Acevedo's] fiancé, that she has known him since they were children, and that they have been in a relationship for 4 years. *Id.* at 79-80. Medina also testified that [Acevedo] has been living with her for the 4 years that they have been in a relationship. *Id.* at 80. Medina testified that on the morning of January 19, 2023, she was with [Acevedo], they were about to go to her dental appointment, and that they were waiting in the car for the parole agents to arrive. *Id.* When the state parole agents arrived, Medina opened the house for them, and they asked if there were any weapons inside the home. *Id.* at 81. Medina explained later during her testimony that she did not remember that she had the firearm under their bedroom mattress so she advised parole agents as soon as she remembered it was there. *Id.* at 110-112.

Medina testified that she unlocked and opened the bedroom door for agents with the key she had with her at the time. *Id.* at 89-90. Medina testified that the bedroom door is always locked because she keeps a gun under the mattress and she does not want anyone to know. *Id.* at 99. She further testified that she has children she does not want entering the bedroom because of the "pills" on her dresser. *Id.* Medina testified that [Acevedo] does not have a key to their bedroom. *Id.* at 99. She further explained that although it is also [Acevedo's] bedroom, that the house is only under her name so only she has a key to the bedroom. *Id.* at 100. She then testified that [Acevedo] does not need a key to the bedroom because they are "always together." *Id.* She explained that they are "always in the house" doing "family stuff" and "yard sales." *Id.* at 104-105. Later during cross examination, Medina testified that [Acevedo] does have a key to the house, but does not have a key to the bedroom. *Id.* at 105. She also testified that there have been times when [Acevedo] was at their house while she was not so he did "sometimes" have the key to the bedroom and that "sometimes" she would leave the bedroom door unlocked if they were home. *Id.* at 105-106.

Medina testified that she purchased the 9 mm pistol found under the mattress in their bedroom. *Id.* at 84. Medina testified that she did not remember what kind of gun the pistol found under the mattress was because she has "so many toys." *Id.* at 91. She further described "toys" by stating "I like my guns." *Id.* She testified that [Acevedo] was not with her when she purchased the pistol, that she never told [Acevedo] about the pistol, and that [Acevedo] never saw her with the pistol. *Id.* at 88. Medina also testified that [Acevedo] never asked what the lump underneath the mattress was and that she was not aware of anytime that [Acevedo] would have any access to the pistol. *Id.* at 88-89.

Medina testified that although her belongings were on the left side of the bed, that is where [Acevedo] slept. *Id.* at 82-83. She testified the reason [Acevedo] slept on the left side of the bed is because he has a back/shoulder injury and that side of the bed is closer to the bathroom. *Id.* at 83, 116. Medina also testified that the nightstand on the left side of the bed is the only dresser they have because the bedroom is very small. *Id.* When asked about the bags and

purses hanging on the left side of the bed, Medina explained "I hang everything up everywhere in my house. It's my house." *Id.* at 96. She further testified that she puts everything on the left side of the bed because there is no other space in the bedroom. *Id.*

Medina testified on cross examination that the reason she put the firearm under the mattress is because [Acevedo] works away from home sometimes and is "not always around." *Id.* at 97, 108. Medina then later testified that she "usually" goes to the shooting range, but [Acevedo] doesn't know when she goes there. *Id.* at 108-109. She explained that [Acevedo] "doesn't ask questions" about what she does. *Id.* at 108. Medina testified that [Acevedo], after being in a 4 year long relationship with her, has no idea that she has a hobby of going to the shooting range. *Id.* at 117. She further explained that [Acevedo] was unaware of the shooting range hobby until this incident occurred on January 19, 2023, because she does not tell him everything that she does. *Id.* at 117-118. Medina testified that "[h]e got his own life. I've got mine." *Id.* at 118. She further testified that she put the firearm under the mattress the weekend before January 19, 2023, because [Acevedo] "went out" and that she forgot it was there. *Id.* at 111.

Trial Court Opinion, filed 2/20/24, at 1-6.

At trial, Acevedo stipulated that he could not legally possess a gun because he had been convicted of an enumerated felony. N.T. at 70. After the trial, the jury found him guilty of possession of a firearm prohibited. The court sentenced Acevedo to 48 to 96 months' incarceration. This appeal followed.

Acevedo raises one issue for our review: "Did the Commonwealth fail to present sufficient evidence to establish, beyond a reasonable doubt, that [Acevedo] actually or constructively possessed a firearm in violation of 18 Pa.C.S.A. § 6105(a)(1)?" Acevedo's Br. at 2.

Acevedo argues that because the firearm was not found on him, the Commonwealth could not prove actual possession but was required to prove culpability through constructive possession. *Id.* at 4-5. He asserts that the Commonwealth failed to prove that he constructively possessed the firearm because it did not present evidence that he knew of, had access to, or could exercise control over the firearm. *Id.* at 4. He maintains that the evidence only established that Medina had purchased the firearm without his knowledge and Medina was the person who owned and controlled the gun. *Id.* at 4, 18. Acevedo stresses that Medina had control of the keys to their locked bedroom and Medina, not Acevado, informed the agents that there was a firearm between the mattress and box spring of the bed. *Id.* at 19. Acevedo also points out that Agent Turse informed him on January 18, 2023 that his residence would be searched the next day. He argues "[h]ad [he] known of the firearm, with knowledge that the residence would be searched, he would not have secreted it in a place that would be easily discovered; rather[,] he would have either removed it from the residence and disposed of the firearm or hid it off premises." *Id.* at 18-19. Acevedo further argues that there was no forensic link connecting him to the firearm because the gun was not tested for DNA or fingerprints. *Id.* at 18. He concludes "there was no direct evidence that [he] knew of the firearm, jointly possessed the firearm or constructively possessed the firearm." *Id.*

The sufficiency of the evidence is a question of law. "Our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v.***

*Mikitiuk*, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Feliciano*, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. *Commonwealth v. Patterson*, 180 A.3d 1217, 1229 (Pa.Super. 2018). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa.Super. 2017). We "may not substitute our judgment for that of the factfinder." *Commonwealth v. Griffith*, 305 A.3d 573, 576 (Pa.Super. 2023).

To prove possession of a firearm by a prohibited person, the Commonwealth must show that the defendant was: (1) prohibited from possessing a firearm under Section 6105(b), and (2) possessed a firearm. *See* 18 Pa.C.S.A. § 6105(a)(1). A firearm includes any weapon that is "designed to or may be readily converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S.A. § 6105(i).

Possession can be established "by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." ***Id.*** Constructive possession exists where the defendant has "the power to control the contraband and the intent to exercise that control." ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa.Super. 2013) (citation omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa.Super. 2018). The Commonwealth may prove constructive possession by the totality of the circumstances and through circumstantial evidence. ***Hopkins***, 67 A.3d at 820. "[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." ***Parrish***, 191 A.3d at 37. Rather, the Commonwealth must also prove the defendant's intent to control the contraband by showing the defendant's knowledge of the existence and location of the contraband. ***Id.*** "[T]wo actors may have joint control and equal access and thus both may constructively possess the contraband." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (citation omitted).

Here, the trial court found that the Commonwealth presented sufficient circumstantial evidence that Acevedo constructively possessed the firearm. *See* Trial Ct. Op. at 8. Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the court's conclusion. The evidence showed that Acevedo attempted to reschedule the date of the home visit and appeared "distressed" during the search. N.T. at 38-39, 41. Acevedo had lived in the house with Medina for four years. *Id.* at 80. The locked bedroom in which the firearm was found belonged to Acevedo and Medina. *Id.* at 100. The firearm was located on the right side of their shared bed towards the pillow area, which was near a closet with men's clothing and shoes. *Id.* at 54-55. There was a nightstand on the left side of the bed that contained women's undergarments and prescription pill bottles belonging to Medina. *Id.* at 54. There were also purses and bags containing receipts belonging to Medina hanging on the left side of the headboard of the bed. *Id.* Although Medina testified Acevedo slept on the left side of the bed and knew nothing about the firearm, the jury as factfinder was within its right to assess credibility and believe all, part, or none of her testimony. *Miller*, 172 A.3d at 640. We agree that, based on the totality of the circumstances, the evidence was sufficient to establish that Acevedo constructively possessed the firearm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>03/14/2025</u>